IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRAGMATUS AV, LLC,                    )
                                      )
            Plaintiff,                )
                                      )
      v.                              )      Civil Action No. 11-902-LPS-CJB
                                      )
YAHOO! INC.,                          )
                                      )
            Defendant.                )

## REPORT AND RECOMMENDATION

Plaintiff Pragmatus AV, LLC ("Pragmatus" or "Plaintiff") filed this action for patent infringement against Defendant Yahoo! Inc. ("Yahoo!" or "Defendant"). Presently pending before the Court is Defendant's motion to transfer venue pursuant to 28 U.S.C. § 1404(a) ("Motion"). (D.I. 28) For the reasons that follow, I recommend that Defendant's Motion be DENIED.

## I.      BACKGROUND

### A.      The Parties

Plaintiff Pragmatus is a Virginia limited liability company with its principal place of business in Alexandria, Virginia. (D.I. 43 at ¶ 1) It is a small patent holding company that acquires patents with a view toward monetizing them. (D.I. 34 at ¶ 2-3) Pragmatus employs two managers—one located in Alexandria, the other in Wayne, Pennsylvania—and a technical consultant based in Alexandria. (*Id.* at ¶ 4-5) It has no office or other presence in California, nor does it have any operations or sales in that State. (*Id.* at ¶ 6)

After filing the instant action, Plaintiff went on to file fourteen other patent infringement actions in this District, each of which allege infringement of at least one of the patents-in-suit.

Eight of those cases (including this one) remain pending.  (D.I. 33 at 2-3)  Of the eight pending

matters, three are assigned to Judge Leonard P. Stark (including this case), while five are

assigned to Chief Judge Gregory M. Sleet.[1]  In two of those cases, an Answer has been filed by

one or more of the respective defendants; in another, no Answer has yet been filed; in another, a

motion to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6), is pending; in two

more, the proceedings have been stayed due to a related pending action in the U.S. International

Trade Commission ("ITC") and in the remaining action, Answers have been filed and a motion

to stay due to an ITC investigation is pending.

Defendant Yahoo! is a Delaware corporation with its principal place of business in

Sunnyvale, California.  (*Id.* at ¶ 2; D.I. 30 at ¶ 2)  It has 29 offices in the United States; the

largest of those is its headquarters, located in Sunnyvale.  (D.I. 30 at ¶ 2)  Although Defendant is

incorporated in Delaware, it has no offices or employees in Delaware.  (*Id.* at ¶ 3)

### B.    Procedural Background

On October 4, 2011, Pragmatus commenced this action, asserting that Yahoo! infringes

five of its patents:  United States Patent No. 6,237,025 ("the '025 Patent"), entitled "Multimedia

Collaboration System"; United States Patent No. 6,351,762 ("the '762 Patent"), entitled "Method

and System For Log-in-Based Video And Multimedia Calls"; United States Patent No. 5,854,893

("the '893 Patent"), entitled "System For Teleconferencing In Which Collaboration Types And

Participants By Names Or Icons Are Selected By A Participant Of The Teleconference"; United

---

[1]    The case numbers for the other seven cases (with the last three digits of the
patents-in-suit included in parentheses) are: 11-1082-GMS ('025, '762, '500); 11-1084-GMS
('025, '762, '054, '893); 11-1085-GMS ('025, '762, '054, '500, '893); 11-1091-GMS ('025, '500);
11-1092-GMS ('025, '762, '054); 12-199-LPS ('025, '762, '054, '893); and 12-201-LPS ('025, '762,
'054, '893). (D.I. 34, ex. A)

States Patent No. 7,185,054 ("the '054 Patent"), entitled "Participant Display And Selection In Video Conference Calls"; and United States Patent No. 5,896,500 ("the '500 Patent"), entitled "System For Call Request Which Results In First And Second Call Handle Defining Call State Consisting Of Active Or Hold For Its Respective AV Device." (D.I. 1 at ¶¶ 6–10)  Pragmatus alleged that Yahoo! infringed these patents by (1) "making, using, offering for sale, selling and/or practicing the inventions covered by [certain claims of the patents-in-suit], at least by providing" its Yahoo! Messenger product, and (2) by inducing others to infringe, or by contributing to others' infringement of those claims, "including at least users of Yahoo! Messenger." (*Id.* at ¶¶ 12-13, 16-17, 20-21, 24-25, 28-29)

In lieu of filing an Answer, on December 1, 2011, Yahoo! filed a motion to dismiss the Complaint pursuant to Rule 12(b)(6). (D.I. 7)  On January 18, 2012, Judge Stark entered a Scheduling Order in the case. (D.I. 18)

On March 27, 2012, Defendant filed the instant Motion, seeking to have this action transferred to the Northern District of California (the "Northern District") pursuant to 28 U.S.C. § 1404(a). (D.I. 28)  On April 6, 2012, this matter was referred to me by Judge Stark to hear and resolve all pretrial matters, up to and including the resolution of case-dispositive motions. On June 13, 2012, I heard oral argument on the Motion.

On July 25, 2012, Plaintiff filed an Amended Complaint, which now included allegations of willful infringement as to four of the five patents-in-suit, but otherwise was similar in all material respects to the original Complaint. (D.I. 43)  Defendant then filed a motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) on the same grounds as stated in its earlier-filed motion to dismiss; that motion remains pending. (D.I. 44)

## II.    DISCUSSION

### A.    Legal Standard

Section 1404(a) of Title 28 provides the statutory basis for a transfer inquiry.  It provides

that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought or to

any district or division to which all parties have consented."  28 U.S.C. § 1404(a).

### 1.    Appropriateness of Transferee Venue

The first step in the transfer analysis is to determine whether this action could have been

brought in the proposed transferee venue.  "The party moving for transfer bears the burden of

proving that the action properly could have been brought in the transferee district in the first

instance."  *Mallinckrodt, Inc. v. E–Z–Em Inc.*, 670 F.Supp.2d 349, 356 (D. Del. 2009) (internal

quotation marks and citations omitted).  Here, there is no dispute that this infringement action

could have been properly brought in the Northern District, the district in which Defendant

resides.  (D.I. 29 at 6); *see also* 28 U.S.C. § 1400(b).

### 2.    Applicable Legal Standards

"[S]ection 1404(a) was intended to vest district courts with broad discretion to determine,

on an individualized, case-by-case basis, whether convenience and fairness considerations weigh

in favor of transfer."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (citing

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1988)).  In two seminal cases regarding

the transfer inquiry, *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir.1970) and *Jumara v. State

Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995), the Third Circuit clearly emphasized the hurdle that a

defendant faces when it seeks to have a matter transferred to another jurisdiction pursuant to

4

Section 1404(a). The Third Circuit explained that "courts normally defer to a plaintiff's choice of forum" and thus "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879 (internal quotation marks and citation omitted). This general principle, drawn from the historic respect accorded a plaintiff's choice of venue, suggests that "a transfer is not to be liberally granted." *Shutte*, 431 F.2d at 25 (citing *Ungrund v. Cunningham Bros., Inc.*, 300 F. Supp. 270, 272 (S.D. Ill. 1969)).

The party seeking a transfer has the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Id.*; *see also Jumara*, 55 F.3d at 879. That burden is a heavy one: "unless the balance of convenience of the parties is *strongly in favor of defendant*, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25 (internal quotation marks and citation omitted) (emphasis added); *see also CNH Am. LLC v. Kinzenbaw*, C.A. No. 08-945(GMS), 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009). Accordingly, "transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Angiodynamics, Inc. v. Vascular Solutions, Inc.*, C.A. No. 09-554-JJF, 2010 WL 3037478, at *2 (D. Del. July 30, 2010); *see also Illumina, Inc. v. Complete Genomics, Inc.*, Civil Action No. 10-649, 2010 WL 4818083, at *2 (D. Del. Nov. 9, 2010).[2]

---

[2]     In its briefing and at oral argument, Yahoo! appeared to suggest that the burden on a defendant in the transfer analysis is less significant than that set out in *Shutte* and *Jumara*, such that "there isn't a strong showing" required of defendants in order to obtain a transfer of venue. (D.I. 40 at 8; *see also* D.I. 36 at 2) Yahoo! cites *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 198 & n.5 (D. Del. 1998) in support of this statement, noting that this case emphasized that the standard for transferring a case under Section 1404(a) was "something less" than the standard for dismissing a case on *forum non conveniens* grounds. Yet while *Affymetrix* noted this difference, it also fully emphasized that *Shutte* required that a defendant bear the "heavy burden" to show that the balance of convenience tips "strongly in favor" of transfer in the Section 1404(a) analysis. *Affymetrix, Inc.*, 28 F. Supp. 2d at 198-200 (internal quotation marks and citation omitted). Defendant also cites to *MP Vista, Inc. v. Motiva Enterprises LLC*, C.A. No. 07-099-

The Third Circuit has observed that, in undertaking this transfer analysis, "there is no

definitive formula or list of . . . factors to consider." *Jumara*, 55 F.3d at 879. Instead, courts

must analyze "all relevant factors" to determine whether "the litigation would more conveniently

proceed and the interests of justice be better served by transfer to a different forum." *Id.*

Nevertheless, in *Jumara*, the Third Circuit identified a set of private interest and public interest

factors that should be taken into account in this analysis (the "*Jumara* factors"). The private

interest factors to consider include:

> [1] [The] plaintiff's forum preference as manifested in the original choice,
> [2] the defendant's preference, [3] whether the claim arose elsewhere, [4]
> the convenience of the parties as indicated by their relative physical and
> financial condition, [5] the convenience of the witnesses—but only to the
> extent that the witnesses may actually be unavailable for trial in one of the
> fora . . . and [6] the location of books and records (similarly limited to the
> extent that the files could not be produced in the alternative forum).

*Id.* at 879. The public interest factors to consider include:

> [1] [T]he enforceability of the judgment, [2] practical considerations that
> could make the trial easy, expeditious, or inexpensive, [3] the relative
> administrative difficulty in the two fora resulting from court congestion, [4]
> the local interest in deciding local controversies at home, [5] the public
> policies of the fora, . . . and [6] the familiarity of the trial judge with the
> applicable state law in diversity cases.

*Id.* at 879–80. The Federal Circuit has indicated that district courts should explicitly consider

---

GMS, 2008 WL 5411104, at *2 (D. Del. Dec. 29, 2008), particularly its statement that "[t]he
moving party . . . is not required to show truly compelling circumstances for change of venue, but
rather that all relevant things considered, the case would be better off transferred to another
district." However, *MP Vista* also cited to *Jumara*'s statement that a plaintiff's choice of venue
"will not be lightly disturbed," and nothing in *MP Vista* indicates the belief that this standard has
been lessened. 2008 WL 5411104, at *2. Moreover, the quotation in *MP Vista* referenced by
Yahoo! is itself drawn from *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001), a case
discussing the law regarding venue in criminal cases pursuant to Fed. R. Crim. P. 21(b), not civil
cases like this one.

each of these *Jumara* factors, at least to the extent that the parties make "arguments" about them.

*In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011) (noting that it would

be "improper to ignore" any of the factors in such a circumstance).[3]

### a.   Private Interest Factors

#### i.   Plaintiff's choice of forum

The parties disagree as to the appropriate amount of weight to be given to Pragmatus'

choice of Delaware as its preferred form. This choice not only relates to the heightened burden

(previously referenced above) that a defendant faces in showing that transfer is warranted, but it

also is the first of the *Jumara* private interest factors that I must consider. This sometimes

creates confusion as to what it is that a court should take into account in considering this first

factor, and how that analysis differs from the court's role—after considering all of the *Jumara*

factors—in determining whether the balance of convenience weighs strongly in defendant's favor

so as to justify transfer.

In *Shutte*, the Third Circuit noted that a "plaintiff's choice of a proper forum is a

paramount consideration in any determination of a transfer request." *Shutte*, 431 F.2d at 25. I do

not read this reference in *Shutte* as requiring that a court should automatically grant this first

*Jumara* private interest factor greater relative weight than the other private and public interest

factors set out in *Jumara*. Instead, I believe the *Shutte* Court's reference to the plaintiff's choice

of forum receiving "paramount consideration" relates back to the nature of the burden that a

---

[3]      In analyzing a motion to transfer in a patent case, the law of the regional circuit (here, the Third Circuit), applies. *Intellectual Ventures I LLC v. Checkpoint Software Tech. Ltd.*, 797 F. Supp. 2d 472, 487 n.7 (D. Del. 2011) (citing *Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1331 (Fed. Cir. 2011)).

defendant must overcome in the transfer inquiry. Because "paramount consideration" is due to that choice, it stands to reason that when considering the combined impact of the *Jumara* factors as part of the overall balance of convenience analysis, that balance should have to tip "strongly in favor of defendant" for transfer to be granted. *Id.*; *see also Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 200 (D. Del. 1998) (noting that *Shutte*'s "paramount consideration" reference relates to the general "heavy burden" that a defendant carried in demonstrating that the balance of convenience weighed strongly in favor of transfer, not to the nature of the analysis called for regarding the first *Jumara* factor).

Instead, when analyzing the first *Jumara* private interest factor—the "plaintiff's forum preference as manifested in the original choice"—the court should not consider simply the *fact* of that choice, but the *reasons* behind that choice. *Affymetrix*, 28 F. Supp. 2d at 200.[4] If those reasons are "rational and legitimate" then they will "weigh[] against transfer," as they are likely to support a determination that the instant case is properly venued in this jurisdiction. *Id.*; *cf. In re Amendt*, 169 Fed. App'x. 93, 96 (3d Cir. 2006) (citing *Jumara* and, in examining the first two private interest factors, considering that elements of the claims "arose in each of the two fora

_____

[4]     In *Affymetrix*, the Court went on to determine that it would address the relative strength of the first two *Jumara* private interest factors—regarding the plaintiff's choice of forum and the defendant's choice of forum—not by considering those factors on their own, but instead by incorporating its thinking as to those factors into its consideration of other relevant *Jumara* factors. *Affymetrix*, 28 F. Supp. 2d at 200-01.  In significant part, this was due to the Court's concern with "double-counting," in that the proffered rationales underlying plaintiff's and defendant's choice of forum bore a close relationship to the parties' arguments as to other *Jumara* factors (such as the relative administrative difficulty in the two fora resulting from court congestion). *Id.* Here, in light of the Federal Circuit's recent admonition that district courts should explicitly consider each of the *Jumara* factors to the extent they are addressed by the parties, *see Link_A_Media*, 662 F.3d at 1224, and because I do not see a concern with double-counting in doing so, I will consider these two factors independently, on a stand-alone basis. (D.I. 40 at 11)

8

[plaintiff's preferred forum and defendant's preferred forum]" at issue regarding the transfer motion, such that the weight given to the factors effectively cancelled each other out).[5] On the other hand, where a plaintiff's choice of forum is arbitrary, irrational, or selected to impede the efficient and convenient progress of a case, it should not be afforded substantial weight. *Affymetrix*, 28 F. Supp. 2d at 200 (noting that if a plaintiff had no good reason, or an improper reason, for filing suit in this District, this factor would likely weigh against transfer).

Yahoo! argues that Pragmatus' choice of forum "should not be given any significant weight" here because this District is not Pragmatus' "home turf." (D.I. 36 at 3; *see also* D.I. 29 at 7) This Court has developed a "home turf" rule in analyzing motions to transfer pursuant to Section 1404(a), which generally states that if Delaware is the plaintiff's "home turf," the presumption in favor of the plaintiff's choice of forum is especially strong. *Joint Stock Soc'y "Trade House Descendants of Peter Smirnoff, Official Purveyor to the Imperial Court" v. Heublein, Inc.*, 936 F. Supp. 177, 186 (D. Del. 1996).[6] However, Yahoo! misinterprets the

---

[5]     When Judges of this Court have examined the first *Jumara* private interest factor, they have similarly considered whether the plaintiff has brought suit in this District based on legitimate, rational reasons. *See, e.g., Zazzali v. Swenson*, 852 F. Supp. 2d 438, 449 (D. Del. 2012) (determining that a plaintiff's "preferred forum [was] entitled to significant deference" where its decision to file in Delaware "relat[ed] to legitimate and rational concerns") (internal quotation marks and citations omitted); *Joint Stock Soc'y "Trade House Descendants of Peter Smirnoff, Official Purveyor to the Imperial Court" v. Heublein, Inc.*, 936 F. Supp. 177, 188 (D. Del. 1996) ("As long as the plaintiff's choice of forum relates to its legitimate, rational concerns, its choice 'should be accorded significant weight.'") (citation omitted).

[6]     As originally forumlated, a plaintiff's "home turf was its home or principal place of business." *Joint Stock Soc'y*, 936 F. Supp. at 186. Over time, this Court broadened the geographical scope of the concept, such that "home turf" refers to the forum closest to the plaintiff's residence or principal place of business in which the party can effect personal service over the principal defendant. *Id.* There is a divergence of opinion in our Court as to whether an entity's "home turf" can include its place of incorporation. *Intellectual Ventures I LLC v. Altera, Corp.*, 842 F. Supp. 2d 744, 754 (D. Del. 2012).

import of the "home turf" rule and the place that this rule has in the transfer analysis.

The "home turf" rule was first referenced in this District over thirty-five years ago in *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761 (D. Del. 1975) and then again in *General Instrument Corp. v. Mostek Corp.*, 417 F. Supp. 821 (D. Del. 1976). As this Court held then, the burden of proof for a defendant seeking transfer "is no less where plaintiff is litigating away from its home turf." *Gen. Instrument Corp.*, 417 F. Supp. at 822; *see also Burroughs*, 392 F. Supp. at 763. Regardless of whether this District is or is not a plaintiff's "home turf," the same overarching standard set out in *Shutte* for considering a transfer motion applies—the defendant must show that the balance of convenience is strongly in its favor in order to justify a transfer of venue. *Id.* Nor was this "rule" meant to suggest that if a plaintiff is not suing on its "home turf," then as to the first *Jumara* private interest factor, a plaintiff's choice of forum should be automatically be given no weight, or any set amount of weight. *Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 289 (D. Del. 1986). Instead, the rule simply sets forth the commonsense proposition that when a plaintiff chooses to litigate outside of its "home turf," it will tend to be "easier for defendant to meet [its] burden" to show that the balance of convenience strongly weighs in its favor, because the plaintiff has chosen a forum that is likely less convenient (relatively speaking) than its home turf would have been. *Gen. Instrument Corp.*, 417 F. Supp. at 822–23. As a result, our Court has explained that the "'home turf rule' is merely a short-hand way of saying that, under the balancing test inherent in any transfer analysis, the weaker the connection between the forum and *either* the plaintiff *or* the lawsuit, the greater the ability of a defendant to show sufficient inconvenience to warrant transfer." *Affymetrix*, 28 F. Supp. 2d at 198.

10

In this case, there is no dispute that Pragmatus—a Virginia LLC with its principal place

of business in Virginia—is not on its home turf here in Delaware. (D.I. 29 at 7; D.I. 33 at 5)

And so, as compared to a circumstance where a plaintiff's principal place of business was located

in Delaware, it may be easier for Yahoo! to show (after proceeding through the *Jumara* analysis)

that the balance of convenience tips strongly in its favor. But when considering the first *Jumara*

private interest factor, I must go on to analyze the legitimacy of Pragmatus' proffered reasons for

choosing Delaware as a forum for this suit.

Pragmatus states that it brought suit in this District because: (1) the District is close to

Pragmatus' Virginia offices; (2) there are several other suits pending in this District involving the

same patents; and (3) it is Yahoo!'s state of incorporation. (D.I. 33 at 5-6) I have no difficulty in

concluding that a plaintiff's decision to file suit in the district in which a defendant is

incorporated—a district where plaintiff can have some certainty that there will be personal

jurisdiction over the defendant— is a rational, legitimate choice. *See, e.g., Helicos Biosciences*

*Corp. v. Illumina, Inc.*, Civ. No. 10-735-SLR, 2012 WL 1556390, at *3-4 (D. Del. May 3, 2012)

(noting that "a defendant's state of incorporation had always been a predictable, legitimate venue

for bringing suit" in that it is a venue where a defendant can be sued); *see also Intellectual*

*Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 754 (D. Del 2012); *Mallinckrodt, Inc.*, 670

F.Supp.2d at 357. This is especially understandable where that district is in relatively close

physical proximity to the plaintiff's place of business (here, Virginia). *Helicos Biosciences*

*Corp.*, 2012 WL 1556390, at *4 (finding that fact that plaintiff's principal place of business was

in Massachusetts, a "venue close to" Delaware, was a legitimate reason for filing suit in this

District).

11

For these reasons, this factor weighs against transfer.

## ii.    Defendant's forum preference

Yahoo! prefers to litigate in the Northern District. Just as it has done in examining the

plaintiff's choice of forum, when analyzing a defendant's forum preference, our Court has tended

to examine whether the defendant can articulate rational, legitimate reasons to support that

preference. *See, e.g., Affymetrix*, 28 F. Supp. 2d at 201. Here, Yahoo! argues that it has a

number of such reasons for seeking to transfer the case to the Northern District, including: (1)

Yahoo!'s principal place of business is located in that District; and (2) the majority of its

employees with knowledge relevant to the issues in this case are located there. (D.I. 29 at 7-8)

This Court has found such reasons to be legitimate bases for seeking to transfer a suit to a

particular district, and I too agree that they are. *See, e.g., Microsoft Corp. v. Geotag Inc.*, 847 F.

Supp. 2d 675, 678 (D. Del. 2012); *Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 602 (D. Del.

2012); *Altera*, 842 F. Supp. 2d at 755.

Pragmatus argues that Yahoo!'s preference should nevertheless be given little weight. In

doing so, it first cites to precedent from this Court supporting the proposition that a defendant's

preferred forum is "not given the same weight as Plaintiff's preference." (D.I. 33 at 6 (citing

*Altera*, 842 F. Supp. 2d at 755)). Second, it relies on other authority for the proposition that

because Yahoo! is a Delaware corporation, it accordingly "cannot complain when suit is brought

against it in Delaware." (D.I. 33 at 6 (citing *Mallinckrodt, Inc.*, 670 F. Supp. 2d at 357 and *Carl

Zeiss Meditec, Inc. v. XOFT, Inc.*, C.A. No. 10-308-LPS-MPT, 2010 WL 4024603, at \*2 (D. Del.

Oct. 13, 2010)).

As to Pragmatus' first argument, it is true that a defendant's forum preference is not given

12

the "same weight" as the plaintiff's preference under *Shutte, Jumara* and their progeny—in the

sense that it is the historical respect given to a *plaintiff's* forum choice that led to *Shutte*'s

requirement that the balance of convenience should have to tip "strongly in favor of defendant"

for transfer to be granted. However, I cannot find any authority from the Third Circuit

suggesting that the weight accorded to *this particular Jumara factor* should automatically be

reduced or lessened in every case, as compared to the weight accorded to the first private interest

factor. Instead, this factor was simply listed as one of many that the *Jumara* Court found to be

relevant in the transfer analysis. *Cf. In re Amendt*, 169 Fed. App'x. at 96 (examining defendant's

forum preference and finding that because elements of the claims at issue arose in that forum,

this weighed against transfer, without suggesting that the factor automatically held less weight in

the *Jumara* "balance of considerations" calculus).

    With regard to Pragmatus' second argument, the Court agrees that the fact of Defendant's

incorporation in Delaware can have real resonance in the *Jumara* "balance of convenience"

analysis.[7] That fact, and what it suggests about the appropriateness of suing Yahoo! in this

forum, has, for example, already impacted the Court's view regarding the first *Jumara* private

---

[7]    Nothing in the Federal Circuit's opinion in *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011) is to the contrary. In *Link_A_Media*, the Federal Circuit noted that a party's state of incorporation is not one of the factors listed in Section 1404 or in *Jumara*, and stated that it would be inappropriate for a court to place "heavy reliance" on this fact, such that it became "dispositive" in the venue transfer analysis. *Id.* at 1223-24. On the other hand, nothing in *Link_A_Media* suggests that a defendant's place of incorporation is irrelevant to the transfer analysis. Indeed, in many circumstances, the Federal Circuit has found that the location of a defendant's incorporation in a forum can be a fact supporting the conclusion that a lawsuit is properly venued in that same forum. *In re Altera Corp.*, Misc. No. 121, 2012 WL 2951522, at *2 (Fed. Cir. July 20, 2012) (per curiam) (citing fact that all of the parties had incorporated in Delaware as supporting the denial of transfer from this District); *Micron Tech.,* 645 F.3d at 1332 (noting that parties' incorporation in Delaware weighed "in favor of keeping the litigation in Delaware," in light of fact that they had "willingly submitted to suit there.").

interest factor. However, this second *Jumara* private interest factor asks the Court to examine the *defendant's forum preference*. I believe that this suggests that the appropriate place to focus in examining this factor is not on the forum that a defendant does not prefer (here, this District), but on the forum it does prefer (here, the Northern District)—and to examine whether the defendant has chosen the latter forum for a reason that does not suggest an improper motive or inappropriate forum shopping. As noted above, after doing so, the Court believes that Yahoo! has legitimate reasons for choosing to litigate in the Northern District.

This factor therefore weighs in favor of transfer.

### iii. Whether the claim arose elsewhere

The third private interest *Jumara* factor asks "whether the claim arose elsewhere." "[A]s a matter of law, a claim for patent infringement arises wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosciences, Inc.*, Civ. No. 11-173-SLR, 2012 WL 1556489, at *5 (D. Del. May 3, 2012) (quoting 35 U.S.C. § 271)); *see also Wacoh Co.*, 845 F. Supp. 2d at 599, 602 (noting that, as to patent infringement suit regarding the making and selling of sensors, "[t]o some extent, the claims arose where the allegedly infringing products were designed and manufactured," but that the claims also arose wherever the products were sold).

Yahoo! argues that the central acts giving rise to Pragmatus' claims for patent infringement relate to the development of the accused product, Yahoo! Messenger—in essence, where the product was "made" or "used" by Yahoo!, or where Yahoo! practices the patent claims—and that this occurred in Sunnyvale, California, not Delaware. (D.I. 29 at 8; D.I. 36 at 9; D.I. 40 at 79) Yahoo! further notes that it does not sell or offer to sell Yahoo! Messenger;

14

instead, it allows anyone who provides personal information and agrees to the terms of service to use it without payment. (D.I. 36 at 9 (citing a portion of Yahoo!'s website)) Pragmatus does not directly dispute these facts. However, applying the principles of law cited above, it argues that its claim of patent infringement arose everywhere in the United States, including Delaware, as the accused product is readily available here. Accordingly, it asserts that this factor is neutral. (D.I. 33 at 7)

As to the operative acts of infringement that have been articulated to me with some specificity in the briefing and at oral argument, those appear primarily to have occurred in the Northern District. There are indirect infringement claims in the Amended Complaint that relate to the use of Yahoo! Messenger by its users (claims that have been challenged in the pending motion to dismiss). It may be that if those claims survive, some amount of the underlying acts of direct infringement alleged will have a connection to Delaware. However, because it appears that the primary acts giving rise to the Plaintiff's claim of infringement—again, at least those that have clearly been communicated to the Court—have a far stronger connection to the Northern District than to Delaware, this factor weighs in favor of transfer. *See Altera*, 842 F. Supp. 2d at 755 (finding this factor to weigh in favor of transfer where, *inter alia*, some research and development of allegedly infringing products occurred in proposed transferee district and none in Delaware, although the allegedly infringing products were sold nationwide).

### iv.   Convenience of the parties as indicated by their relative physical and financial condition

In assessing the next private interest factor—"the convenience of the parties as indicated by their relative physical and financial condition"— this Court has traditionally examined a

15

number of factors. These have frequently included: (1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal. *See, e.g., Geotag*, 847 F. Supp. 2d at 678; *L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 2d 588, 595 (D. Del. 2008).

Yahoo! argues that litigating in the Northern District would be more convenient because its operations and employees are located there (whereas no witnesses or documents are in Delaware), and also because its source code regarding Yahoo! Messenger is located and will be produced there. (D.I. 29 at 9) For its part, Pragmatus does not disagree that the Northern District would be convenient for Yahoo!, but argues that it would be far less convenient for it, as its business is based out of Alexandria, Virginia (a mere 115 miles from Wilmington, Delaware). (D.I. 33 at 6-8) Pragmatus also contends that this factor weighs in its favor because it is a small, non-practicing entity with only two managers, while Yahoo! is a "global powerhouse." (*Id.* at 8) Finally, Pragmatus asserts that, because Yahoo! is a Delaware corporation, it cannot now argue that it is inconvenient for it to be sued here. (*Id.* at 9)

In terms of the parties' relative physical location in relation to the prospective venues, Delaware appears to be a more convenient venue for Pragmatus than the Northern District, in light of this District's physical proximity to (1) Pragmatus' principal place of business and (2) the location of Pragmatus' two managers, who work in Virginia and suburban Philadelphia. However, there is nothing in the record that gives the Court a sense of Pragmatus' financial circumstances, or whether it would be logistically or financially burdensome for it to litigate the case in California. *Cf. Robocast, Inc. v. Apple, Inc.*, Civil Action Nos. 11-235-RGA, 10-1055-

16

RGA, 2012 WL 628010, at \*2 (D. Del. Feb. 24, 2012) (finding that this factor weighed against transfer, where plaintiff had three employees, down from 22 employees ten years prior, and had difficulty even affording to file the lawsuit at issue, whereas defendant was a "large and powerful corporation" that would have the upper hand if the matter turned into a "war of attrition").

For its part, the Northern District is clearly more convenient for Yahoo!, particularly in light of the significant number of its employees (including potential trial witnesses) who work there. On the other hand, in light of its significant size, it is a fair factual inference that Yahoo! has the financial ability to easily compensate for any marginal additional cost associated with litigation in this District, as opposed to the Northern District. (D.I. 30 at ¶ 2 (noting that Yahoo! has 29 offices in the United States)); *see also Intel Corp. v. Broadband Corp.*, 167 F. Supp. 2d 692, 706 (D. Del. 2001). Moreover, while there would be additional inconvenience to Yahoo! employee witnesses, were they to have to travel to Delaware to testify in this matter, the amount of such travel is not likely to be significantly burdensome—particularly if this case does not result in a trial.[8] *See, e.g., Human Genome Sciences, Inc. v. Genentech, Inc.*, C.A. Nos. 11-082-LPS, 11-156-LPS, 11-328-LPS, 2011 WL 2911797, at \*7 (D. Del. July 18, 2011) (noting that the likelihood that few case events would occur in Delaware—particularly few if the case did not go

---

[8]     Our Court has also noted that there is a seeming incongruity when a party such as Yahoo!, which has chosen to incorporate in Delaware, now asserts that the State is an inconvenient locale in which to defend a lawsuit. *Altera*, 842 F. Supp. 2d at 756 (citing *Micron Tech.*, 645 F.3d at 1332). In deciding to incorporate in Delaware, Yahoo! has agreed to submit itself to the jurisdiction of the courts in this State for the purpose of resolving certain legal disputes. *Id.* (citing *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 572 (D. Del. 2001)). While the Northern District may be a more convenient venue for Yahoo! to litigate this case, Yahoo!'s choice to incorporate in Delaware does make it more difficult for it to persuasively argue that this venue is decidedly *inconvenient*. This further weighs against a finding in Yahoo!'s favor here.

17

to trial—weighed against transfer, as did technological advances that allow traveling employees

to more easily interact with their office while traveling).

On balance, I find that this factor to be neutral, not weighing in favor of either party.

### v. Convenience of the witnesses to the extent that they may actually be unavailable for trial in one of the fora

The "convenience of the witnesses" is the next factor, "but only to the extent that the

witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. "[I]n

reviewing a motion to transfer, courts "frequently look to the availability of witnesses as an

important factor, as it can be relevant to protecting a defendant's opportunity to put on its case

with witnesses who will appear in person at the trial." *ADE Corp. v. KLA-Tencor Corp.*, 138 F.

Supp. 2d 565, 569 (D. Del. 2001). In explaining how the concerns implicated by this factor

relate to the different types of witnesses who might testify at trial, this Court has noted:

> Party witnesses or witnesses who are employed by a party carry no weight
> in the "balance of convenience" analysis since each party is able, indeed,
> obligated to procure the attendance of its own employees for trial. . . .
> Expert witnesses or witnesses who are retained by a party to testify carry
> little weight in determining where the "balance of convenience" lies
> (especially in an action for patent infringement) because they are "usually
> selected [on the basis] of their reputation and special knowledge without
> regard to their residences and are presumably well compensated for their
> attendance, labor and inconvenience, if any.". . . Fact witnesses who
> possess first-hand knowledge of the events giving rise to the lawsuit,
> however, have traditionally weighed quite heavily in the "balance of
> convenience" analysis.

*Affymetrix,* 28 F. Supp. 2d at 203 (citations omitted). Of particular concern, then, are fact

witnesses who may not appear of their own volition in the venue-at-issue and who could not be

compelled to appear by subpoena pursuant to Federal Rule of Civil Procedure 45. *ADE Corp.*,

138 F. Supp. 2d at 569.

Yahoo! argues that this factor favors transfer, because there are several non-party witnesses with relevant information who are located within the Northern District—and are therefore outside of the subpoena power of this Court, rendering their attendance at trial here uncertain. (D.I. 29 at 10-11) More specifically, Yahoo! states that the five inventors of the patents-in-suit, the primary prosecuting attorney of those patents and an entity that formerly owned the patents, are all outside of Delaware's subpoena power, while many of them are within the subpoena power of the Northern District. (*Id.*) Yahoo! further argues that Pragmatus has not identified any likely witnesses in or near Delaware. (D.I. 36 at 7) In response, Pragmatus argues that this factor is effectively neutral, because Yahoo! has not made any showing that its witnesses would be unwilling or unavailable to attend a trial in Delaware. (D.I. 33 at 9)

As an initial matter, our Court has noted that the practical impact of this factor is limited, in light of the fact that so few civil cases today proceed to trial (and at trial, so few fact witnesses testify live). *Cellectis*, 2012 WL 1556489, at *6 & n.6; *Altera*, 842 F. Supp. 2d at 757-58. A party's ability to put forward testimony of certain witnesses at trial is, of course, important. These cases simply recognize that the impact of this factor has to be tempered a bit by the unlikely event of a trial's occurrence.

Even more significantly, there is little in the way of specifics in the record as to these witnesses. The Court can assume that the third party witnesses that Yahoo! has named, particularly the inventors of the patents-in-suit, will be likely to provide relevant testimony in this case. However, Yahoo! has not been more specific and has not articulated why or how a particular witness' knowledge bears on a specific issue. More importantly, Yahoo! (nor Pragmatus) has provided any evidence as to whether these witnesses would be willing or

19

unwilling to testify here. Although an analysis of the *Jumara* factors requires a court to look

forward, in an attempt to discern what might happen in a case months or years ahead, a court's

conclusions need to be grounded in some factual basis. The sole fact that a witness is outside of

this Court's subpoena power provides little insight into whether that witness will be actually

*unavailable* for trial. In my view, absent some concrete evidentiary showing that these

individuals would be unlikely to testify, it is difficult to give the defendant's argument as to their

potential unavailability significant weight.[9] *See, e.g., Tessera, Inc. v. Sony Elec. Inc.*, Civil No.

10-838 (RMB) (KW), 2012 WL 1107706, at *6 (D. Del. Mar. 30, 2012) (finding that "the better

approach [to this inquiry] is to recognize that witnesses have and will appear here without having

to be subpoenaed," absent some evidence put forward to the contrary) (citing cases); *Carl Zeiss*,

2010 WL 4024603, at *2 (noting that failure of party to provide evidence regarding witnesses'

unavailability weakened showing as to this factor); *ADE Corp.*, 138 F. Supp. 2d at 571

(determining that, rather than presuming a witness outside of the court's subpoena power will not

appear, the better course is to engage in an analysis of the facts and circumstances pertaining to

those witnesses).

---

[9] There are some decisions from this Court that suggest otherwise. For example, Defendant cites *Nilssen v. Everbrite, Inc.*, No. Civ.A 00-189-JJF, 2001 WL 34368396, at *2 (D. Del. Feb. 16, 2001), for the proposition that, when considering this factor, "it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power." (D.I. 29 at 11; *see also* D.I. 40 at 28)  However, in support of this proposition, *Nilssen* cited *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 511 (D. Del. 1999)—a case where the Court intently considered whether there was evidence that the non-party witnesses at issue would actually be unavailable for trial. 77 F. Supp. 2d at 511-12. For the reasons set forth above, the Court believes that to automatically consider a witness unavailable, simply because they reside outside of this District's subpoena power, would render the inquiry required by this factor unduly wooden. *Tessera, Inc. v. Sony Elec. Inc.*, Civil No. 10-838 (RMB) (KW), 2012 WL 1107706, at *6 n.7 (D. Del. Mar. 30, 2012).

20

Ultimately, it appears that at least some relevant non-party witnesses reside outside the

subpoena power of this Court, but would be within the subpoena power of the Northern District.

The import of this is tempered significantly by the fact that no specific evidence has been put

forward as to these witnesses, particularly whether any of them are actually unlikely to participate

in a trial here.

In such a circumstance, I find this factor to favor transfer, but only slightly.

### vi.    Location of books and records

Next the Court considers "the location of books and records (similarly limited to the

extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused

infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of

transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal

quotation marks and citation omitted).  This factor is commonly given little weight, however, as

technological advances have "shortened the time it takes to transfer information, reduced the

bulk or size of documents or things on which information is recorded . . . and have lowered the

cost of moving that information from one place to another." *Cypress Semiconductor Corp. v.*

*Integrated Circuit Sys., Inc.*, No. 01-199-SLR, 2001 WL 1617186, at *3 (D. Del. Nov. 28, 2001)

(internal quotation marks and citations omitted); *see also Cellectis*, 2012 WL 1556489, at *6;

*ADE Corp.*, 138 F. Supp. 2d at 571 ("With new technologies for storing and transmitting

information, the burden of gathering and transmitting documents 3,000 miles is probably not

significantly more than it is to transport them 30 miles.").  While the practical reality of these

advances in technology may alter the weight given to this factor, a court should not ignore the

factor entirely. *Link_A_Media*, 662 F.3d at 1224.

Citing these principles of law, Yahoo! first argues that this factor favors transfer because much of the documentation relevant to infringement—documents in Yahoo!'s possession and those in the possession of three of the five inventors who reside in Northern California—are located in the proposed transferee forum. (D.I. 29 at 12) Yahoo! further points out that its source code regarding Yahoo! Messenger is located in the Northern District and that it "reduces risk" to have that source code remain there, as opposed to being brought to Delaware if the case goes to trial. (D.I. 36 at 8) In response, Pragmatus argues that this factor is neutral both because Yahoo! has not demonstrated that its books and records could not be produced in Delaware and because Pragmatus' books and records are much closer to Delaware than to California. (D.I. 33 at 10)

It does not appear to be disputed that the majority of relevant documentation regarding the claims and defenses in this case is already located in the Northern District. However, even Yahoo! acknowledges that this factor is "less of a concern," because there will likely be no significant practical hurdle to collecting, scanning and electronically (or physically) producing the relevant books and records in Delaware. (D.I. 40 at 35) In the rare circumstance that this case proceeds to trial, and to the extent that Yahoo! must produce its source code here in Delaware during such a trial, that would generate some risk for Yahoo!. That risk, however, could likely be well managed with thoughtful preparation.

Taking these facts into account, I find that this factor should favor transfer, but only slightly.

        **b.    Public Interest Factors**

### i.      Enforceability of judgment

The parties agree that this factor is neutral.  (D.I. 29 at 13; D.I. 33 at 10)

### ii.     Practical considerations that could make the trial easy, expeditious, or inexpensive

The Court next considers the "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879.  Yahoo! argues that the primary practical considerations here are that a transfer to California will eliminate Pragmatus' need for local counsel and greatly reduce travel costs both for counsel and for the witnesses.  (D.I. 29 at 13) Pragmatus contests that these facts have any relevance as to this factor.  (D.I. 33 at 10-11) Instead, it argues that the only persuasive practical consideration at play here is the fact that there are seven other actions involving the patents-in-suit currently pending in this District.  (*Id.* at 10-12)  Specifically, Pragmatus argues that keeping this lawsuit in the same court as other actions involving some or all of the same patents will preserve time and resources and reduce the risk of inconsistent decisions.  (*Id.*)

The Court agrees with Pragmatus that the most significant practical consideration raised by the parties (and not previously taken into account), is the fact of the other seven pending cases in this District.  Each of those cases trails this one in terms of their current procedural posture, and they each involve infringement claims against a different defendants, regarding a different products.  Despite these differences, each of these other seven cases involve one or more of the same patents as those at issue in this case.  Although not all of these cases may proceed through discovery and toward trial, the odds are that (as this one has) some of them will.  And if that is so, the fact that the same patents are involved will almost certainly mean that Judges in this

23

District will face some of the same legal issues in more than one case, such as motions affecting the pleadings, discovery-related disputes, or disputes regarding claim construction.

As just one example of this, in one of the other cases (Civil Action No. 11-1092, which is before Chief Judge Sleet), the defendant has filed a motion to dismiss Pragmatus' complaint, pursuant to Rule 12(b)(6). The defendant in that case states that its motion is "based on substantially the same grounds as the pending motion to dismiss in *Pragmatus AV, LLC v. Yahoo! Inc.*, C.A. No. 11-00902 (LPS)." (Civil Act. No. 11-1092-GMS, D.I. 7 at 1) Indeed, the defendants' respective opening briefs as to those two motions are nearly identical, often tracking each other word-for-word and citing the same legal authority, mostly cases from this District. (*Compare* D.I. 8, *with* Civil Act. No. 11-1092-GMS, D.I. 8) Thus, after one of the two motions is resolved, a Judge of this Court will have the benefit of reviewing another's Judge's decision on a similar motion, involving a similar complaint and identical arguments, applying the same precedent to the same legal issues. Such efficiencies, gained by having these various litigation matters in one Court, can be significant. *See, e.g.*, *Altera*, 842 F. Supp. 2d at 759; *Apple Inc. v. High Tech Computer Corp.*, C.A. No. 10-544-GMS, 2011 WL 143909, at *3 (D. Del. Jan. 18, 2011); *Cashedge, Inc. v. Yodlee, Inc.*, No. Civ.A.06-170 JJF, 2006 WL 2038504, at *2 (D. Del. July 19, 2006); *Brunswick Corp. v. Precor, Inc.*, No. 00-691-GMS, 2000 WL 1876477, at *3 (D. Del. Dec. 12, 2000).

In addition, since Yahoo! filed its Motion, a Scheduling Order has been entered in this case. (D.I. 18) The parties, relying on the structure of that order, have been proceeding through discovery. Interrogatories and requests for production have been propounded, initial disclosures, infringement contentions and invalidity contentions have been exchanged, and proposed

24

constructions of claim terms are soon to be exchanged. (D.I. 16, 22, 23, 24, 26, 35, 39, 47, 51). This Court has already gained some familiarity with the case and with the legal issues raised in the pending motions, and stands prepared to conduct a *Markman* hearing in less than three months. Were the case to be transferred to another jurisdiction at this stage, the new Court could certainly ably handle the matter. But in light of this case's current procedural posture, I believe there would be a net loss of efficiency for the federal court system as a whole.

For these reasons, this factor weighs against transfer.

### iii. Administrative difficulties in getting the case to trial

The next factor is the "relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. Yahoo! asserts that this factor favors the Northern District, noting that (1) the average time to trial for civil cases in the Northern District was 0.85 months less, and the average time to disposition 3.1 months less, than that in this District over the last six years; and (2) because fewer patent cases are filed in the Northern District (as opposed to this District), it would be "more efficient for this case to be transferred to the district [that is] less congested with complex patent disputes." (D.I. 29 at 14)

However, for the first time in years, this Court now has a full bench of four U.S. District Judges (and, for the first time ever, three U.S. Magistrate Judges). In light of that, and the relatively small differential in the statistics cited by Yahoo!, I am not persuaded by its argument that difficulties relating to court congestion favor transfer. *Altera,* 842 F. Supp. 2d at 759-60 ("Particularly given that this Court—for the first time nearly five years—no longer has a judicial vacancy, the Court is not persuaded that administrative difficulties due to court congestion favor transfer."); *Intellectual Ventures I LLC v. Checkpoint Software Tech. Ltd.*, 797 F. Supp. 2d 472,

25

486 (D. Del. 2011) (finding 3.7 month differential in time to trial "inconsequential" in examining

this factor).

     The Court finds this factor to be neutral.

### iv.    Local interests in deciding local controversies at home

     In patent litigation, the local interest factor is typically neutral, "because patent issues do

not give rise to a local controversy or implicate local interests." *TriStrata Tech., Inc. v. Emulgen*

*Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008); *cf. In re Hoffman–La Roche Inc.*, 587 F.3d

1333, 1338 (Fed. Cir. 2009) ("While the sale of an accused product offered nationwide does not

give rise to a substantial interest in any single venue, if there are significant connections between

a particular venue and the events that gave rise to a suit, this factor should be weighed in that

venue's favor.").

     Yahoo! suggests that the Northern District nevertheless has a local interest regarding this

action, in that this suit relates to infringement by an accused service that originated there and it is

"where the people responsible for [the product's] development and marketing are located." (D.I.

29 at 14) Were this case to end with the result that Yahoo! Messenger itself was impacted in

some way, such as through the imposition of an injunction, it could be said that a locus of

Yahoo! employees in the Northen District would be disproportionally impacted by that result.

(D.I. 40 at 41) However, even Pragmatus, the party seeking injunctive relief here, suggests that

the future grant of an injunction is unlikely. (*Id.* at 71) Moreover, Yahoo! Messenger is a

product used by consumers nationwide, and the impact on those users—in all districts, including

this one—would be wide-ranging. That broad impact is, I think, emblematic of why our Court

has noted that the nationwide interest in and impact of certain patent litigation often renders this

26

factor insignificant in such cases. *See, e.g., Helicos Biosciences Corp.*, 2012 WL 1556390, at \*7.

I therefore find that this factor to be neutral.

### v.    Public policy of the fora

Yahoo! argues that this factor is neutral because neither forum has any special public policies that would cause it to be favored. (D.I. 29 at 15)  Pragmatus disagrees, arguing that this factor weighs slightly against transfer because, as a matter of Delaware public policy, Delaware corporations are encouraged to use Delaware as a forum for resolution of business disputes. (D.I. 33 at 13)

Though the Court recognizes Delaware's policy of encouraging Delaware corporations to use the courts of this State as a forum for resolving disputes, that policy has generally only been considered relevant to a transfer analysis where the parties on both sides of the dispute were Delaware corporations. *See, e.g., Altera*, 842 F. Supp. 2d at 760 (dispute among Delaware entities); *Wacoh Co.*, 845 F. Supp. 2d at 604 (noting limitation of policy where plaintiff is not a Delaware corporation).  Here, it is only Yahoo! that is a Delaware entity and it has expressed its choice not to avail itself of Delaware as a forum.  Accordingly, the fact that Yahoo! is incorporated in Delaware has little bearing on this factor in this case. *See Wacoh Co.*, 845 F. Supp. 2d at 604 (finding public policy argument to be inapplicable where "the corporation that has chosen Delaware is not a Delaware corporation, and the corporations that might want to claim the benefits of being a Delaware corporation do not want to do so in this case."); *cf. IPVenture, Inc. v. Acer, Inc.*, Civil Action No. 11-588-RGA, 2012 WL 3016958, at \*8 (D. Del. July 24, 2012).

For these reasons, the Court finds that this factor is neutral.

### vi.    Familiarity of the trial judge with applicable state law in diversity cases

The parties agree that this factor is neutral. (D.I. 29 at 15; D.I. 33 at 13).

### c.    Conclusion Regarding Impact of Transfer Factors

In sum, the plaintiff's choice of forum and practical considerations weigh against transfer. The defendant's forum preference and whether the claim arose elsewhere weigh in favor of transfer. Two other factors—the convenience of the witnesses and the location of books and records—also weigh in favor of transfer, though only slightly, and not sufficiently to make a material impact on the Court's decision.

In the end, the issue is a close one. The Court however, concludes that Yahoo! has not demonstrated that the balance of convenience of the parties tips *strongly* in its favor, as is required by Third Circuit precedent in *Shutte* and its progeny. Pragmatus has brought suit here in a district that is very near to its place of business and to the location of its employees, a district where it had a legitimate basis to file the litigation (in light of the fact, among other things, that Yahoo! is itself incorporated here), and where the same Court is overseeing myriad other litigation matters involving the patents-in-suit. There are many connections between the Northern District and the facts, witnesses and documents that are likely to be important to this matter. However, in light of the particular concerns listed in each of the *Jumara* factors, these connections do not necessarily always have a significant impact on the transfer analysis. Ultimately, after careful consideration of all of the *Jumara* factors and the law interpreting them, the Court does not find that the scales have tipped so strongly in favor of transfer so as to warrant the grant of Yahoo!'s motion.

28

## III.   CONCLUSION

For the foregoing reasons, I recommend that the Court DENY the Motion.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the

loss of the right to de novo review in the district court.  *See Henderson v. Carlson*, 812 F.2d 874,

878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Non-Pro Se Matters For

Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is

available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: October 15, 2012

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

29