IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRAGMATUS AV, LLC,                        )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )         Civil Action No. 11-902-LPS-CJB
                                          )
YAHOO! INC.,                              )
                                          )
            Defendant.                    )

## REPORT AND RECOMMENDATION

Plaintiff Pragmatus AV, LLC ("Pragmatus" or "Plaintiff") filed this action for patent

infringement against defendant Yahoo! Inc. ("Yahoo!" or "Defendant"). (D.I. 1)  On July 25,

2012, Plaintiff filed a First Amended Complaint for Patent Infringement ("FAC").  (D.I. 43)

Presently pending before the Court is Defendant's Motion to Dismiss the FAC, filed pursuant to

Federal Rule of Civil Procedure 12(b)(6) ("Motion" or "Motion to Dismiss").  (D.I. 44)  For the

reasons that follow, I recommend that Defendant's Motion be GRANTED-IN-PART and

DENIED-IN-PART.

## I.  BACKGROUND

### A.   The Parties

Plaintiff Pragmatus is a Virginia limited liability company with its principal place of

business in Alexandria, Virginia.  (D.I. 43 at ¶ 1)  Defendant Yahoo! is a Delaware corporation

with its principal place of business in Sunnyvale, California.  (*Id.* at ¶ 2; D.I. 30 at ¶ 2)

### B.   Procedural Background

On October 4, 2011, Pragmatus commenced this action, asserting that Yahoo! infringes

certain claims of five of its patents:  United States Patent No. 6,237,025 ("the '025 Patent"),

entitled "Multimedia Collaboration System"; United States Patent No. 6,351,762 ("the '762 Patent"), entitled "Method and System For Log-in-Based Video And Multimedia Calls"; United States Patent No. 5,854,893 ("the '893 Patent"), entitled "System For Teleconferencing In Which Collaboration Types And Participants By Names Or Icons Are Selected By A Participant Of The Teleconference"; United States Patent No. 7,185,054 ("the '054 Patent"), entitled "Participant Display And Selection In Video Conference Calls"; and United States Patent No. 5,896,500 ("the '500 Patent"), entitled "System For Call Request Which Results In First And Second Call Handle Defining Call State Consisting Of Active Or Hold For Its Respective AV Device." (D.I. 1 at ¶¶ 6–10) Pragmatus alleged that Yahoo! infringed these patents by (1) "making, using, offering for sale, selling and/or practicing the inventions covered by [certain claims of the patents-in-suit], at least by providing" its Yahoo! Messenger product, and (2) by inducing others to infringe, or by contributing to others' infringement of those claims, "including at least users of Yahoo! Messenger." (*Id.* at ¶¶ 12-13, 16-17, 20-21, 24-25, 28-29)

In lieu of filing an Answer, on December 1, 2011, Yahoo! filed a motion to dismiss the Complaint pursuant to Rule 12(b)(6). (D.I. 7) Briefing on this motion was complete on January 6, 2012. (D.I. 15) On April 6, 2012, this matter was referred to me by Judge Leonard P. Stark to hear and resolve all pretrial matters, up to and including the resolution of case-dispositive motions.

On July 25, 2012, Plaintiff filed the FAC, which now included allegations of willful infringement as to four of the five patents-in-suit, but otherwise was similar in all material respects to the original Complaint. (D.I. 43) Defendant then filed the Motion to Dismiss with regard to the FAC. (D.I. 44) For purposes of this Motion to Dismiss, Defendant incorporated by

2

reference the briefing it had filed in support of dismissal of the initial Complaint and did not file

a new opening brief. (*Id.* at ¶ 4) Plaintiff, however, filed a new answering brief on August 17,

2012. (D.I. 45) Briefing was completed when Defendant filed a new reply brief on August 27,

2012. (D.I. 46)

## II. LEGAL STANDARD

The sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil

Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2). When presented with a Rule 12(b)(6) motion to

dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC

Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).[1] First, the court separates the factual and legal

elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but

[disregarding] any legal conclusions." *Id.* at 210–11. Second, the court determines "whether the

facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for

relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 129 S.Ct 1937, 1950 (2009)). Thus, although a

non-fraud claim need not be pled with particularity or specificity, that claim must "give the

---

[1]     In a patent case, a motion to dismiss for failure to state a claim is reviewed under
the law of the regional circuit. *In re Bill of Lading Transmission and Processing Sys. Patent
Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012). However, although Federal Circuit decisions on
such issues are not considered binding, courts have considered the reasoning in those cases as
strongly persuasive authority. *See, e.g., Joao Control & Monitoring Sys. of California, LLC v.
Sling Media, Inc.*, No. C-11-6277 EMC, 2012 WL 3249510, at *4 n.1 (N.D. Cal. Aug. 7, 2012);
*Conte v. Jakks Pac., Inc.*, No. 1:12-cv-0006 LJO GSA, 2012 WL 3069971, at *2 n.1 (E.D. Cal.
July 27, 2012). To the extent that Federal Circuit caselaw is cited in this Report and
Recommendation with regard to the Motion, it is not because the Court has treated that case law
as binding. Instead, it is because the Court has found the reasoning of those cases persuasive
when considering them in light of Supreme Court precedent, the law of the regional circuit (here,
the Third Circuit) and the related decisions of this Court.

defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Fowler*, 578 F.3d at 211 (citations omitted). Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted); *accord Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In assessing the plausibility of a claim, the court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).[2]

---

[2]     Courts faced with a motion to dismiss must generally limit their consideration solely to "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). In this case, the patents-in-suit were attached as exhibits to the original Complaint; they are referenced in the FAC as being exhibits to that pleading as well. (D.I. 1, 43)

## III.  DISCUSSION

Defendant's Motion alleges that Plaintiff has insufficiently pled claims of direct and indirect infringement.  The Court will consider these arguments in turn.

### A.  Direct Infringement

#### 1.  Standards Regarding Sufficiency of Allegations of Direct Infringement

For a party to be held liable for direct patent infringement under 35 U.S.C. § 271(a), that party must commit all the acts necessary to infringe the patent, either personally or vicariously. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012). In the context of method claims, this means that "the accused infringer must perform all the steps of the claimed method, either personally or through another acting under his direction or control." *Id.* Thus, "[a]bsent an agency relationship between the actors or some equivalent . . . a party that does not commit all the acts necessary to constitute infringement has not been held liable for direct infringement even if the parties have arranged to 'divide' their acts of infringing conduct for the specific purpose of avoiding infringement liability." *Id.* (citing *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311 (Fed. Cir. 2005)).

The required form of pleading for an allegation of direct infringement in a patent case depends on whether or not the suit implicates a theory of joint infringement. *See, e.g., Eon Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp. 2d 527, 534-35 (D. Del. 2011). As to a direct patent infringement claim that *does not* implicate a theory of joint infringement (sometimes referred to as an allegation of "undivided" infringement), Form 18 of the Appendix of Forms to the Federal Rules of Civil Procedure (the "Rules") sets forth a sample complaint for that claim. *See In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334

5

(Fed. Cir. 2012) (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)).

The United States Court of Appeals for the Federal Circuit has repeatedly held, most recently in

*In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323 (Fed. Cir.

2012), that because an asserted claim of direct infringement that follows the dictates of Form 18

clearly passes muster under the Rules, such an allegation cannot be successfully attacked in a

motion to dismiss. *Id.* at 1334 (noting that Federal Rule of Civil Procedure 84 and its

accompanying Advisory Committee Notes indicate that the forms in the Appendix to the Rules

satisfy the Rules' dictates as to the sufficiency of a complaint's allegations). Noting that any

changes to the Rules must be obtained by amendment, not by judicial interpretation, the Federal

Circuit has held that whether a complaint adequately pleads direct infringement is "to be

measured by the specificity required by Form 18." *Id.* The *Bill of Lading* Court further

explained that to the extent a party argues that "*Twombly* and its progeny conflict with the Forms

and create differing pleading requirements, the Forms control." *Id.*

Each of the four District Judges of this Court have come to the same conclusion, finding

that a claim of "undivided" infringement is sufficiently alleged if it matches what is required by

Form 18. *See, e.g., Via Vadis, LLC v. Skype, Inc.*, Civil Action No. 11-507-RGA, 2012 WL

2789733, at *1 (D. Del. July 6, 2012); *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d

559, 562 (D. Del. 2012); *St. Clair Intellectual Prop. Consultants, Inc. v. Apple Inc.*, C.A. No. 10-

00982-LPS, 2011 WL 4571812, at *2 (D. Del. Sept. 30, 2011); *Mark IV Indus. Corp. v.

Transcore, L.P.*, C.A. No. 09-418 GMS, 2009 WL 4828661, at *3-4 (D. Del. Dec. 2, 2009).

Form 18 itself simply requires:

(1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the

patent; (3) a statement that defendant has been infringing the patent 'by
making, selling, and using [the device] embodying the patent;' (4) a
statement that the plaintiff has given the defendant notice of its
infringement; and (5) a demand for an injunction and damages.

*Bill of Lading*, 681 F.3d at 1334 (quoting *McZeal*, 501 F.3d at 1357); *see also Walker Digital*,

852 F. Supp. 2d at 562.

However, when a plaintiff's allegation of direct infringement *does* implicate a theory of

joint infringement, this Court has held that a plaintiff must do more.  Unlike an allegation of

"undivided" infringement, in which the assertion is that a defendant performed or used each and

every step of a claimed method, a claim of joint infringement requires an assertion that various

parties perform all of the claimed steps *and* that one party exercises direction or control over the

infringing activities of all other parties.  *Eon Corp.*, 802 F. Supp. 2d at 534 (citing *Desenberg v.*

*Google, Inc.*, 392 F. App'x 868, 871 (Fed. Cir. 2010)).  Therefore, for a claim of joint

infringement, in addition to satisfying the requirements of Form 18, a plaintiff must also plead

facts sufficient to allow a reasonable inference that one party exercises the requisite "direction or

control," such that performance of every step is attributable to the controlling party.  *Eon Corp.*,

802 F. Supp. 2d at 534-35; *see also Aeritas, LLC v. Alaska Air Group, Inc.*, — F. Supp. 2d —,

2012 WL 4470386, at *4 (D. Del. Sept. 28, 2012); *Global Patent Holdings, LLC v. Panthers*

*BRHC LLC*, 586 F. Supp. 2d 1331, 1335 (S.D. Fla. 2008).

## 2.   Sufficiency of the Complaint Pursuant to Form 18

Pragmatus asserts that its claims of direct infringement are claims of "undivided"

infringement—that it alleges in the FAC that "Yahoo! alone performs each step of the claimed

methods by (among other things) providing and conducting teleconferences through its Yahoo!

Messenger teleconference service." (D.I. 45 at 5)  It therefore asserts that its direct infringement

allegations need only comply with Form 18 and that they "indisputably" do so.  (*Id.*)

Indeed, on its face, Plaintiff's FAC meets the minimal requirements provided by Form 18.

First, the FAC alleges jurisdiction in the District of Delaware because this is an action for patent

infringement, and because Defendant is incorporated within this District and has committed acts

of infringement here.  (D.I. 43 at ¶¶ 3-4)  Second, Plaintiff alleges that it owns the patents-in-suit.

(*Id.* at ¶¶ 6-10)  Third, for each patent-in-suit, Plaintiff alleges that Defendant—Yahoo!

alone—has and continues to infringe directly "one or more claims of the [patent-at-issue] by

making, using, offering for sale, selling and/or practicing the inventions covered by at least [the

claim-at-issue] . . . at least by providing Yahoo! Messenger." (*Id.* at ¶¶ 12, 17, 22, 27, 32)

Fourth, Plaintiff alleges that it has provided Defendant with written notice of its infringement.

(*Id.* at ¶¶ 13, 18, 23, 28, 33)  Fifth, Plaintiff makes a demand for an injunction and damages.  (*Id.*

at 7-8)

These allegations are comparable in detail to those contained in Form 18 and to those that

have been accepted as sufficient to allege "undivided" infringement by our Court. *See, e.g.,* Fed.

R. Civ. P. Form 18; *Eon Corp.*, 802 F. Supp. 2d at 532; *St. Clair*, 2011 WL 4571812, at *2-3.

Absent any further argument by Yahoo!, the Court's inquiry as to the sufficiency of these

allegations would normally end here.

> **3.  Whether Plaintiff's FAC Nevertheless Cannot Plausibly State a Claim of "Undivided" Infringement Because the Relevant Claims of the Patents-in-suit Can Only Be Read to Require An Allegation of Joint Infringement**

> **a.  Method of Analysis of Defendant's Motion**

Defendant nevertheless argues that Plaintiff's direct infringement allegations should be

8

dismissed, for a different reason. Noting that each of the claims asserted in the FAC are method

claims, Defendant argues that Plaintiff could not plausibly allege that Defendant performs each

of the claimed steps of those methods. (D.I. 8 at 1-2) As a result, Defendant argues that Plaintiff

*must* be relying upon a joint infringement theory of liability—and since Plaintiff does not allege

that Yahoo! exercises "dominion or control" over any possible joint infringers (i.e., Yahoo!

Messenger users), Plaintiff's direct infringement claims should be dismissed. (*Id.* at 2) Plaintiff

responds by simply stating that it is not alleging joint infringement and, thus, Defendant's

arguments are unavailing. (D.I. 45 at 1-2) Moreover, Plaintiff asserts that it would be premature

for the Court, upon review of the Motion to Dismiss, to conclusively determine that the patents-

in-suit *cannot* be infringed by Yahoo!'s actions alone. (*Id.*) In response, Defendant argues that it

is "not asking the Court to construe claims, resolve factual disputes, or grant summary judgment.

Rather, it is asking the Court to review the sufficiency of [Plaintiff's] infringement allegations,

because even a cursory review reveals that all of the asserted claims recite limitations that are not

and cannot be performed by [Defendant]." (D.I. 46 at 1-2)

    The parties' respective arguments beg the question: Upon review of a motion to dismiss,

how should a court analyze whether a patent's claims cannot plausibly permit an allegation of

"undivided" infringement, in the face of a defendant's argument that the claims require the work

of multiple, joint infringers? A number of courts have considered this issue and have set forth

some analytical guideposts.

    On the one side are those cases where there is no dispute that an allegation of joint

infringement is required. These tend to be cases where either (1) the plaintiff affirmatively states

that it intends to allege joint infringement; or (2) both parties agree that the claims require the

work of joint infringers. In such cases, courts have required that, to survive a motion to dismiss, the plaintiff must allege sufficient facts (pursuant to *Twombly*, *Iqbal* and their progeny) to allow a reasonable inference that one defendant exercises "direction or control" over the acts of any joint infringers. *Eon Corp.*, 802 F. Supp. 2d at 534-35; *Friday Grp. v. Ticketmaster*, No. 4:08CV01203, 2008 WL 5233078, at *3 (E.D. Mo. Dec. 12, 2008); *Global Patent Holdings*, 586 F. Supp. 2d at 1335. This is not the circumstance at play in this case.

On the other side, however, are cases (like this one) where the parties do not agree whether the claims at issue can plausibly be read to allow for one person or entity that performs all of the steps of a claimed method. These cases tend to devolve into a dispute about what certain claim terms can and cannot mean. A number of courts have held that if such cases require a district court to construe the meaning of claim terms and perform an infringement analysis upon review of a motion to dismiss, the motion should be denied, because this type of analysis is inappropriate at the pleading stage.[3] *See, e.g., Eon Corp.*, 802 F. Supp. 2d at 534 n.7; *Fujitsu Ltd. v. Belkin, Int'l., Inc.*, 782 F. Supp. 2d at 868, 890 (N.D. Cal. 2011); *Actus, LLC v. Bank of Am. Corp.*, Civil Action No. 2-09-cv-102-TJW, 2010 WL 547183, at *2 (E.D. Tex. Feb. 10, 2010); *Yangaroo, Inc. v. Destiny Media Techs. Inc.*, No. 09-C-462, 2009 WL 2836643, at *3 (E.D. Wis. Aug. 31, 2009). An infringement analysis requires, first, a "determin[ation of] the meaning and scope of the patent

---

[3]     District courts have also expressed a similar reluctance to engage in claim construction when reviewing motions to dismiss that deal with issues other than an allegation of joint infringement. For example, when a defendant has asserted, on a motion to dismiss, that it cannot infringe a particular patent because its product or service does not meet a particular claim limitation of the patent, this Court has tended to deny such motions, noting that construction of a patent's claim terms should occur after a *Markman* hearing is held. *See, e.g., Walker Digital*, 852 F. Supp. 2d at 562-63; *Deston Therapeutics LLC v. Trigen Labs. Inc.*, 723 F. Supp. 2d 665, 670 (D. Del. 2010).

claims asserted to be infringed" and second a "compari[son of] the properly construed claims" to the accused process or device. *See, e.g., Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). These district courts have reasoned that it is unsuitable to engage in such an inquiry upon review of a motion to dismiss, because claim construction can be illuminated by the consideration of extrinsic evidence—evidence that is often not before the court at that stage. *See, e.g., Fujitsu*, 782 F. Supp. 2d at 890; *Actus*, 2010 WL 547183, at *2; *Yangaroo*, 2009 WL 2836643, at *3. They also note that a claim construction analysis at the pleading stage does not benefit from the procedures (including an exchange of discovery documents relating to infringement, the exchange of proposed constructions and extensive briefing) that typically precede a *Markman* hearing. *See, e.g., H-W Tech., L.C. v. Apple, Inc.*, Civil Action No. 3:11-CV-651-G, 2012 WL 959316, at *7 (N.D. Tex. Feb. 23, 2012); *Fujitsu*, 782 F. Supp. 2d at 890; *Actus*, 2010 WL 547183, at *2. Moreover, it has been noted that the second comparison step of an infringement analysis should not be resolved on a motion to dismiss, because it too requires the consideration of extrinsic evidence (*i.e.*, evidence regarding the accused device or process). *Fujitsu*, 782 F. Supp. 2d at 889-90.

Indeed, in its recent decision in *Bill of Lading*, the Federal Circuit commented on what role, if any, claim construction should play as part of a court's consideration of a motion to dismiss. 681 F.3d at 1343 n.13. The *Bill of Lading* Court noted that when a district court considers the plausibility of the facts alleged in a complaint, it should not "base[] its assessment of the 'reasonableness' of a given inference of infringement on a narrow construction of the patent's claims." *Id.* The Court explained that were a district court to engage in "claim construction at the pleading stage—with no claim construction processes undertaken," this would be "inappropriate,"

11

noting that "we afford the claims their broadest possible construction at this stage of the
proceedings." *Id.*

Defendant, however, cites to the Federal Circuit's decision in *Desenberg v. Google, Inc.*,
392 Fed. App'x 868 (Fed. Cir. 2010). (D.I. 8 at 6)  In *Desenberg*, a district court, on review of a
motion to dismiss, determined that a plaintiff did not state a plausible claim of direct infringement
because defendant Google did not itself perform all of the steps of the method claim-at-issue. The
plaintiff, a patent holder proceeding *pro se*, had stated that he was proceeding under an
"undivided" infringement theory. *Desenberg*, 392 F. App'x at 870. The claim-at-issue recited, in
relevant part:

> A method for a user using a communication network to search for and
> identify at least one matching provider of project work, the method
> comprising;
>
> transmission of a lead comprising contact information that enables
> communication between the user and the provider, wherein the transaction
> lead price is the amount of money paid for the lead, and further *wherein a
> service is performed by the user or the provider as a result of the
> transmission of the lead* and *wherein the performance of the service includes
> a service transaction fee paid by the user or the provider* . . .

*Id.* (emphasis added). First, the district court found that the claim "*clearly require[s]* the
participation of multiple parties," specifically, conduct by both "users" and "providers." *Id.*
(emphasis added) (internal quotation marks and citation omitted). Second, applying the relevant
law regarding joint infringement, the district court found that a claim for direct infringement
"would require [plaintiff] to allege that Google performs both the 'user' and 'provider' steps in
the claim, which [plaintiff] has not alleged, and by the very terms of his patent, cannot realistically
allege." *Id.* at 870-71 (internal quotation marks and citation omitted).

On appeal, the plaintiff argued that the district court had erred, in that the claim did not require multiple parties to perform separate steps of the claimed method, but instead simply described multiple parties (including a "user") performing actions that are mentioned in the claim's "wherein" clause. *Id.* at 871. The Federal Circuit affirmed the district court's decision, finding that the court had "correctly concluded that the claim required performance of all of the steps in order for infringement to lie." *Id.* The *Desenberg* Court, citing in part to an exhibit attached to the complaint, noted that a patent examiner had required the inclusion of the "wherein" clause as a condition of patentability; this supported the district court's conclusion that Google could not be a direct infringer because the method clearly required a user's participation in a manner not directed or controlled by Google. *Id.* As a result, the *Desenberg* Court upheld the district court's decision that Google could not be a direct infringer because it did not perform (or direct or control the performance of) all of the steps in the claimed method. *Id.*

After considering all of this authority, including the minimal requirements that Form 18 lists as necessary to state a claim of "undivided" infringement and the guidance from the *Bill of Lading* Court, I agree with the decisions of the many district courts cited above. To the extent that a defendant asserts that a direct infringement claim should be dismissed because the claim terms-at-issue require joint infringement—and the resolution of that question depends in any meaningful way on the construction of those claim terms—the motion should typically be denied as premature. To engage in the claim construction process upon review of a motion to dismiss would be to go beyond the scope of a court's traditional gatekeeping role in reviewing such a motion; it would instead amount to a more in-depth evaluation of the merits of a plaintiff's case. *See Fujitsu*, 782 F. Supp. 2d at 890 ("If the Court were to construe the Ozawa Patent's claims at

13

the motion to dismiss stage, it would be starting the process of evaluating the merits of Fujitsu's case."). In such a case, so long as a plaintiff has satisfied Form 18's requirements, it has set forth a legally sufficient, plausible claim of direct infringement. I read *Desenberg* simply as allowing that there may be certain (perhaps rare) cases where the facts of record at the pleading stage will so clearly and explicitly indicate that an "undivided" claim of direct infringement cannot stand—in a manner that could not plausibly be challenged at a later claim construction hearing—that dismissal will be appropriate. *See, e.g., Paltalk Holdings, Inc. v. Sony Computer Ent. Am., Inc.*, No. 2:09-CV-274-DF-CE, 2010 WL 3816436, at *1 (E.D. Tex. Sept. 27, 2010) (distinguishing *Desenberg* as a case involving a "claim amendment [that] *explicitly required* a service to be provided by someone other than the defendant, while the complaint alleged that the defendant performed all of the steps by itself") (emphasis added).

### b. The Claims-at-issue

With that method of approaching this legal issue in mind, the Court turns to the Defendant's arguments as to why Plaintiff's direct infringement claims should be dismissed. I find that, as written, the challenged claims do not so clearly and explicitly require the work of joint infringers so as to warrant dismissal.

Defendant first focuses on asserted Claim 13 of the '893 Patent and Claim 11 of the '025 Patent. (D.I. 8 at 7-9) Claim 13 of the '893 Patent provides:

> A method for *conducting a teleconference among a plurality of participants*, each having an associated video capture and display and audio capture and reproduction capabilities, the method comprising the steps of:
> (a) displaying
>       (i)  a first and a second set of potential participants in which
>             (1) the first set includes names of potential participants and

14

(2) the second set includes icons representing potential
participants, and
(ii) a set of collaboration types;
*(b) selecting*
(i) one or more participants
(ii) from among a plurality of the displayed sets of potential
participants;
*(c) selecting*
(i) a desired collaboration type
(ii) from among a plurality of the displayed collaboration types; and
(d) establishing communication
(i) of the selected type,
(ii) with the selected participant to define a teleconference call.

('893 Patent, col. 43:40-64 (emphasis added))  Additionally, Claim 11 of the '025 Patent

provides:

A method for conducting a teleconference among a plurality of participants,
each having an associated video capture and display and audio capture and
reproduction capabilities, the method comprising the steps of:
(a) maintaining
(i) at least one directory, including
(1) a list of potential participants; and
(ii) at least one database, including
(1) addresses of video display devices, and
(2) audio and video capabilities of each video display device,
and
(iii) an association
(1) between the information in the directory and the database;
(b) displaying
(i) participant information from at least the directory
*(c) selecting*
(i) one or more participants
(1) from among the displayed participant information; and
(d) establishing communication
(i) with each selected participant
(ii) using information in the database.

('025 Patent, col. 43:6-32 (emphasis added))  Defendant argues that Plaintiff "cannot plausibly

allege that Yahoo! performs" these "selecting" steps, which require "that selections be made from information displayed on a computer screen." (D.I. 8 at 7) Instead it asserts that Defendant's users, not Defendant, must perform those steps. (D.I. 8 at 7-8)

Defendant's most persuasive argument, as to these "selecting" steps, relates to the '893 Patent. There it notes that the very title of that patent is "System For Teleconferencing In Which Collaboration Types And Participants By Names Or Icons *Are Selected By A Participant Of The Teleconference*," ('893 Patent at 1), and that this only serves to emphasize that the selecting steps at issue in Claim 13 of that patent (relating to the selection of collaboration types and participants) require that "any [such] 'selecting' is performed . . . [by] Yahoo!'s users." (D.I. 8 at 7-8). In its answering brief, Plaintiff does not directly address this argument. (*See* D.I. 45 at 11-12) This is notable, as it could well suggest that there *is* no good answer.

However, Plaintiff does respond by comparing this case to that of *Leader Techs., Inc. v. Facebook, Inc.*, 770 F. Supp. 2d 686, 694 (D. Del. 2011). (D.I. 45 at 11-12) In *Leader Techs.*, this Court denied defendant Facebook's post-trial renewed motion for judgment as a matter of law, in a case where Facebook had argued that certain claims-at-issue required the interaction of Facebook's users. 770 F. Supp. 2d at 695. In essence, Facebook asserted that if infringement of these claims had occurred, the claims required that it be joint infringement (via a combination of actions by Facebook and its end users), and that the evidence at trial had not established that Facebook "directed or controlled" the actions of its end users so as to support a finding of joint infringement. *Id.* at 694. In that case, one independent claim-at-issue recited:

A computer-implemented method of managing data, comprising computer-executable acts of:

16

> *creating data within a user environment of a web-based computing*
> *platform via user interaction with the user environment by a user using an*
> *application, the data in the form of at least files and documents* . . . .
>
> dynamically updating the stored metadata with an association of the data,
> the application, and the second user environment *wherein the user employs*
> *at least one of the application and the data from the second environment.*

*Id.* at 695 (emphasis in original).  This Court found that when the highlighted portions of the

claim were read in context, specifically, when read in relation to the claim's preamble requiring

"computer-executable acts," it was clear that "there is no requirement of user interaction recited

in the claim.  Rather [the claim] claims the back-end process performed by [Facebook's] source

code." *Id.* at 695-96 (internal citation omitted).  This Court denied Facebook's motion, finding

that plaintiff's trial evidence demonstrated that Facebook's source code performed each element

of the claimed method.  *Id.* at 696.

     *Leader Techs.* is, of course, a (1) different case; (2) involving a different method claim;

and (3) an opinion issued at a different stage of the proceeding than that here.  It does indicate,

however, that even claims that prominently include specific reference to a user—claims that

might, at first blush, appear to require that the user performs certain steps of the claimed

method—may not ultimately be found to contain that requirement.  And in this case, as to the

"selecting" steps in the '893 Patent and '025 Patent, the wording of the steps themselves do not

conclusively establish whether the participant (as opposed to, as alleged here, Yahoo!

Messenger's software) plays a role in the performance of that step.  Such a conclusion may have

been easier to draw at this stage if the steps-at-issue were to have read "selecting, by a participant

. . . ." or to have contained words to that effect.[4]   It may well be, as Defendant argues, that its

users must do the "selecting" with regard to these claims. However, in line with the case law

cited above, the Court finds that claim construction is the appropriate time to construe the

meaning of these "selecting" terms.

The Defendant next argues that the '762 Patent recites at least an "initiating" step that

Defendant does not perform. (D.I. 8 at 9-10)  Claim 11 of the '762 Patent recites:

> A method of *conducting a teleconference among a plurality of participants*
> using workstations with associated monitors for displaying visual images,
> and with associated AV capture and reproduction capabilities for capturing
> and reproducing video images and spoken audio of the participants, the
> method comprising the steps of:
>
> (a) associating first and second participants only with each workstation
> logged into by a first and a second participant;
>
> *(b) initiating a call* from the first to the second participant;
>
> (c) routing the initiated call to each and only each workstation at which the
> second participant is logged in;
>
> (d) capturing participant video images and audio of the first and second
> participants;
>
> (e) carrying AV signals representing the captured video images and spoken
> audio of the participants along an AV path among workstations associated
> with the first and second participants; and
>
> (f) managing a videoconference during which the video image and spoken
> audio of the first participant is reproduced at the workstation of the second

---

[4]       *Cf. Intellect Wireless, Inc. v. T-Mobile USA, Inc.*, 735 F. Supp. 2d 928, 936 (N.D.
Ill. 2010) (denying defendant's motion for summary judgment, where defendant asserted that a
method claim requiring "initiating a message from a message originator to a message recipient"
required the conduct of the message originator, on grounds that the claim did not clearly require
this, and noting that had the claim recited "initiating, by a message originator, a message," the
proffered limitation would have been clear); *PA Advisors, LLC v. Google, Inc.*, 706 F. Supp. 2d
739, 748 (E.D. Tex. 2010) (granting defendants' motion for summary judgment on grounds that
claim required joint infringement, with regard to claim step that required the "providing, by the
user to the local computer system, search request data," in significant part because the claim
made it explicit that the "providing" step must be performed "by the user").

participant.

('762 Patent, col. 43:1-22 (emphasis added))  Defendant argues that, with respect to the

"initiating" step, "claim 11 requires that a user (participant) must place the call."  (D.I. 8 at 10)

For its part, Plaintiff asserts that the "initiating" step, as set forth in Claim 11 itself, is

"agnostic as to who does the initiating," and that it is at least plausible, depending on how the

term "initiating" is construed, that Yahoo! Messenger "initiates a teleconference for users just as

a telephone company initiates a phone call for someone making a call."  (D.I. 45 at 10)  The

Court agrees that the determination of this question is more appropriately examined at the

*Markman* stage, as the step at issue does not explicitly require the participation of Defendant's

users.  *Cf. Intellect Wireless, Inc. v. T-Mobile USA, Inc.*, 735 F. Supp. 2d 928, 936 (N.D. Ill.

2010); *PA Advisors, LLC v. Google, Inc.*, 706 F. Supp. 2d 739, 748 (E.D. Tex. 2010).  Indeed,

Defendant's claim as to why the initiating step cannot plausibly be performed by Yahoo!, which

involves repeated citations to the '762 Patent's specification and arguments as to why these

citations give content to the meaning of the "initiating" term—reads like the stuff of claim

construction briefing.  (D.I. 46 at 6); *Fujitsu*, 782 F. Supp. 2d at 889 ("[Defendants] spend much

of their reply brief making arguments about what the [patent-at-issue's] claims cover.  This is

exactly what claim construction is meant to answer.").

Defendant next argues that the '500 Patent recites a "controlling" step that Defendant does

not perform.  (D.I. 8 at 10-11)  Claim 11 of the '500 Patent requires:

A method of *conducting a teleconference* using a system including:
a plurality of AV devices each capable of originating and reproducing audio
and video signals
a plurality of communications ports each supporting
    at least one of the group of switch connections consisting of video in,

video out, audio in and audio out; and
at least one communication path arranged for transport of audio and
video signals the method comprising the steps of
*(a) controlling communication connections*
    (i) between two of the AV devices.
    (ii) over the communication path
(b) by creating,
    (i) as a result of a call request
    (ii) at least a first call handle,
        (1) associated with one of the two AV devices and, thereafter,
    (iii) at least a second call handle
        (1) associated with the other AV device,
    (iv) each call handle defining,
        (1) for its respective AV device,
        (2) a call state being at least one of the group consisting of
        active and hold states, and
        (3) the port switch connections involved in the
        communications connection.

('500 Patent, col. 43:39-67 (emphasis added)) Defendant argues that this is a hybrid system and

method claim, and the claim requires hardware devices, including audiovisual devices (i.e., a

laptop computer), a communication port (i.e., a wireless modem) and a communication path (i.e.,

an Internet connection). (D.I. 8 at 11) It asserts that, to the extent these items are used at all,

Yahoo! does not provide them. (*Id.*) Nor, Yahoo! claims, does it perform the step of

"controlling [these] communication connections." (*Id.*)

     As an initial matter, there appears to be a dispute as to whether the preamble of claim 11,

which refers to the presence of certain hardware utilized in the process of conducting a

teleconference, amounts to a claim limitation. (D.I. 45 at 12 n.4; D.I. 46 at 5) However, the

arguments on either side of this dispute are not fully flushed out in the briefing, and the Court is

not prepared, at this stage of the case, to resolve the question.

     Moreover, as to the "controlling" step, as previously noted, there is a distinction between

claims that contemplate or reference conduct by another and those that *require* conduct by

another in order to perform the claimed step of the method. *See Leader Techs.*, 770 F. Supp. 2d

at 695-96; *Intellect Wireless*, 735 F. Supp. 2d at 934-35. It appears at least plausible, based on

the face of the claim itself, that this claim falls in the latter category and that the "controlling" of

the connections referenced in the claim could be performed by the source code of a product

involved in the teleconference-at-issue (i.e., Yahoo! Messenger). For these reasons, the Court

finds that defendant's motion to dismiss is premature.

   Lastly, Defendant argues that Plaintiff has not properly pled that Yahoo! infringes asserted

Claim 10 of the '054 Patent. (D.I. 8 at 12-13)  Claim 10 recites:

> A method for conducting a teleconference among a plurality of participants,
> each having an associated video capture and display and audio capture and
> reproduction capabilities, the method comprising the steps of:
>
> (a) displaying a graphical rolodex on a participant's video display device,
> including a scrollable listing of entries of video-enabled potential
> participants;
>
> (b) displaying a quick dial list on the participant's video display device and
> listing icons representing video-enabled potential participants copied from
> the graphical rolodex[;]
>
> (c) allowing *an initiating participant to initiate collaboration by selecting
> at least one participants* listed in at least one of the graphical rolodex and
> quick dial list; and
>
> (d) automatically establishing one of a plurality of communication types
> with *a selected participant upon a communication type being selected* or by
> default *when the participant is selected.*

(D.I. 46 at 7 (emphasis in original))  Specifically, Defendant argues that "steps (c) and (d) require

that the call be established with a participant who has already been selected by the initiating

participant." (*Id.*)

   Here, it is not now clear to the Court that it would be implausible for a product or service

21

like Yahoo! Messenger to (as step (c) requires) "*allow[]* an initiating participant to initiate collaboration" in the manner further described in that step. In other words, it seems at least plausible, as Plaintiff argues, that the claim step could be performed when a product or service simply *allows* an initiating participant to initiate such collaboration—and that the remainder of the claim's language does not require the work of a second, joint infringer to perform the step. Similarly, it seems plausible that step (d) could be performed only when one of a plurality of communication types are *established* by such a product or service, in a manner that does not require a joint infringer's conduct to perform the step. As a result, the Court finds that the allegation regarding direct infringement of the '054 Patent should not now be dismissed.

### 4.   Conclusion

Ultimately, as discussed above, the Court finds that Defendant's arguments as to dismissal are premature. The Court emphasizes that its conclusion in this regard suggests no position as to the merits of any arguments that may be made at a *Markman* hearing in this case; the decision is only that, based on the nature of Defendant's claims, its arguments are more properly addressed at that stage and afterwards. Thus, the Court recommends that Defendant's motion to dismiss as to Plaintiff's allegations of direct infringement be denied.

### B.   Indirect Infringement

In the FAC, Plaintiff makes nearly identical allegations of indirect infringement as to each of the patents-in-suit:

Yahoo! has and continues to infringe indirectly one or more claims of the

[relevant Patent] by inducing others to infringe and/or[5] contributing to the
infringement by others of at least [claim number] of the [relevant Patent],
including at least users of Yahoo! Messenger. Pragmatus has provided
Yahoo! written notice of its infringement, and Yahoo! also has written
notice of its infringement by virtue of the filing and service of this
Complaint.

(D.I. 43 at ¶¶ 13, 18, 23, 28, 33) Defendant argues that Plaintiff's claims of induced

infringement and contributory infringement are insufficient because Plaintiff has failed to

adequately plead the requisite knowledge and intent required to properly assert such claims.[6]

(D.I. 8 at 13)

### 1. Inducement

Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be

liable as an infringer." In order to demonstrate inducement of infringement, the patentee must

---

[5]      Plaintiff's use of the phrase "and/or" is disfavored by our Court, as the use of that
phrase in this context does not give a defendant (or the Court) a clear indication as to whether a
plaintiff intends to plead induced infringement, contributory infringement or both. *E. I. Du Pont
de Nemours & Co. v. Heraeus Holding GmbH*, Civ. Action No. 11-773-SLR-CJB, 2012 WL
4511258, at *7 n.5 (D. Del. Sept. 28, 2012) (citing *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F.
Supp. 2d 349, 357 n.11 (D. Del. 2010)). In its briefing, Plaintiff indicates that it intended to
allege both induced infringement and contributory infringement, (D.I. 45 at 16-19), and the Court
thus considers the sufficiency of the FAC's claims with this statement in mind.

[6]      In its opening brief, Defendant also argued that Plaintiff's indirect infringement
claims were insufficient because they failed to identify a purported direct infringer. (D.I. 8 at 13)
However, in its reply brief, Defendant appears to concede that Plaintiff's identification of the
users of Yahoo! Messenger as the purported direct infringers sufficed to withstand a motion to
dismiss. (D.I. 46 at 9) In any event, even if Defendant were still pressing this issue, the Court
would not recommend dismissal of the claims on this basis, as the identification of these users, in
the context provided by the FAC, was sufficient to allow an inference that at least one direct
infringer exists. *See Bill of Lading*, 681 F.3d at 1336 ("[A] plaintiff need not identify a
*specific* direct infringer if it pleads facts sufficient to allow an inference that at least one direct
infringer exists.") (emphasis in original); *see also Lone Star Document Mgmt., LLC v. Atalasoft,
Inc.*, Civil Action No. 2:11-CV-00319-JRG, 2012 WL 4033322, at *4 (E.D. Tex. Sept. 12,
2012).

23

establish, first, that there has been direct infringement, and second, that the alleged indirect

infringer had "knowledge that the induced acts constitute patent infringement." *Global-Tech

Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011); *see also Walker Digital*, 852 F. Supp.

2d at 563. The alleged infringer must "knowingly induce[] infringement and possess[] specific

intent to encourage another's infringement." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293,

1306 (Fed. Cir. 2006) (quoting *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon

Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005)). Accordingly, "[i]nducement requires evidence of

culpable conduct, directed to encouraging another's infringement, not merely that the inducer had

knowledge of the direct infringer's activities." *Id.*; *see also Walker Digital*, 852 F. Supp. 2d at

563.

Unlike with an allegation of direct infringement, where the content of Form 18 controls for

purposes of measuring the sufficiency of the allegation, there are no forms in the Federal Rules of

Civil Procedure relating to indirect patent infringement claims. As a result, the Federal Circuit

and our Court have emphasized that the "general principles of *Twombly* and *Iqbal* must be

applied to indirect infringement claims." *Bill of Lading*, 681 F.3d at 1337 (internal quotation

marks and citations omitted); *see also Pragmatus Telecom, LLC v. Ford Motor Co.*, Civil Action

No. 12-92-RGA, 2012 WL 2700495, at *1 (D. Del. July 5, 2012) (requiring that, as to indirect

infringement claims, "facts [be] alleged from which one could infer that the allegation is

plausible"); *Investpic, LLC v. FactSet Research Sys., Inc.*, Civ. No. 10-1028-SLR, 2011 WL

4591078, at *1 (D. Del. Sept. 30, 2011) (noting that a plaintiff pleading an indirect infringement

claim must state facts in support of that claim, not just legal conclusions). Therefore, in order for

an inducement claim to survive a motion to dismiss, the complaint must contain facts "plausibly

showing that [the alleged indirect infringer] specifically intended [the direct infringers] to

infringe [the patent-at-issue] and knew that the [direct infringer's] acts constituted infringement."

*Bill of Lading*, 681 F.3d at 1339; *see generally E. I. Du Pont de Nemours & Co. v. Heraeus*

*Holding GmbH*, Civ. Action No. 11-773-SLR-CJB, 2012 WL 4511258, at \*4-7 (D. Del. Sept. 28,

2012).

    Defendant argues that Plaintiff's inducement claims are insufficient in that it has not

adequately plead knowledge "that the induced acts constituted patent infringement [or that

Defendants] took affirmative steps with the specific intent to induce another's infringement."

(D.I. 8 at 14; *see also* D.I. 46 at 10)[7]   As to the knowledge prong, Plaintiff argues that it has

---

[7]    One aspect of the knowledge required of the alleged inducer is that it knows of the existence of the patent-at-issue at the time of the alleged infringement—a fact that must be pled in the complaint. *Global-Tech*, 131 S.Ct. at 2068; *Walker Digital*, 852 F. Supp. 2d at 565. Defendant challenges the sufficiency of the allegation of its knowledge of the patent-in-suit only as to Count Five (involving allegations of indirect infringement regarding the '500 Patent) on the grounds that "Pragmatus has not alleged that Yahoo! had any knowledge of [the '500 Patent] before the filing of this suit." (D.I. 46 at 10 n.3)  Count Five of the FAC does allege that Yahoo! had knowledge of the patent's existence "by virtue of the filing and service of this Complaint." (D.I. 43 at ¶ 33)  To the extent Plaintiff intends to cabin its claim for damages to prospective relief—from the date of the filing of the initial Complaint forward—this allegation could suffice, if the claim was otherwise sufficiently pled. *See E.I. Du Pont*, 2012 WL 4511258, at \*5 (citing cases). The Count also alleges that Pragmatus otherwise "provided Yahoo! written notice of its infringement." (D.I. 43 at ¶ 33)  Even assuming this allegation is sufficient to allege that the Defendant knew of the patent pre-suit, it does not allege sufficient facts as to *when* the Defendant knew of the patent. Thus, even if Plaintiff's inducement claim was otherwise properly plead, I would recommend that Plaintiff's claim for damages as to this patent be limited to those from the date of the filing of the initial Complaint unless Plaintiff makes more detailed factual allegations regarding when Defendant received notice of the patent-at-issue. *See Walker Digital*, 852 F. Supp. 2d at 564-65 (limiting plaintiff to damages for post-suit conduct even where the plaintiff alleged that the defendant "was on notice of the [patent-in-suit] prior to [the filling of the initial complaint] through [defendant's] interactions with representatives of [plaintiff]"); *Fujitsu*, 782 F. Supp. 2d at 892 (dismissing induced infringement claim where plaintiff alleged in "conclusory terms that defendants have received notice of the patents" because allegations did not provide notice as to the specific time when notice was provided).

"established Yahoo!'s prior knowledge" of infringement because, in each of the five counts of
the FAC (which correspond to the respective allegations of indirect infringement as to each of the
five patents-in-suit), Plaintiff asserts that it "'provided Yahoo! written notice of its
infringement.'" (D.I. 45 at 18 (citing D.I. 43 at ¶¶ 13, 18, 23, 28, 33)) As to its allegations that
Defendant possessed the specific intent to induce infringement, Plaintiff asserts that "because [it]
averred that Yahoo! continued to infringe after Pragmatus' written notice," it has properly pled
sufficient facts to satisfy the intent requirement. (*Id.*)

In *Bill of Lading*, the Federal Circuit reviewed the sufficiency of a plaintiff's indirect
infringement claims, which included inducement claims. 681 F.3d at 1337-47. The claims were
brought against a group of defendants who were alleged to have indirectly infringed a method
patent that "enable[d] shipping documents to be sent directly from [a] truck driver to a common
point [a process known as 'in-cab scanning'], such as a terminal, so billing and load planning
[regarding the freight in the truck] can occur while the driver is en route with the freight." *Id.* at
1329. The *Bill of Lading* Court ultimately found that the complaints-at-issue did not merely
contain "a formulaic recitation of a cause of action's elements," but instead sufficiently alleged
that the defendants knew that their customer's acts constituted infringement and specifically
intended their customers to infringe the patent-in-suit. *Id.* at 1339, 1346 (internal quotation
marks and citation omitted). This was because the various complaints-at-issue (and their
attachments) contained specific factual allegations not only concerning when defendants became
aware of the patent-in-suit, but also as to:

> (1) Certain defendants' advertising statements relating to their products'
> ability (including when used in conjunction with certain software) to scan
> and transmit documents in a manner similar to the patented method; and/or

26

(2) A defendant's use of seminars targeted toward existing and potential customers to demonstrate how its products could be used in this way; and/or

(3) Statements from an identified customer of certain defendants that the customer used the alleged indirect infringers' products to achieve goals similar to those intended to be accomplished by the use of the patented method.

*Id.* at 1340-46.  The court found that these allegations, when considered in the context of the technology disclosed in the patent-at-issue and of the relevant industry, made it plausible to infer that the defendants intentionally induced infringement of the patent-at-issue.  *Id.*

Here, unlike in *Bill of Lading*, there are not sufficient facts alleged with specificity in the FAC to support the plausible inference that Yahoo! had pre-suit knowledge that its users' actions constituted infringement of the respective patents-in-suit.  The only fact that Plaintiff points to in this regard is the general assertion in each count that Plaintiff provided Yahoo! with "written notice of its infringement."  (D.I. 45 at 17 (citing D.I. 43 at ¶¶ 13, 18, 23, 28, 33))  Not only is there no indication of when that notice was provided to Yahoo!, but no facts are alleged regarding the substance of that notice.  The Court is left to speculate as to what it was about that notice that could have plausibly provided Yahoo! with the requisite knowledge of its users' infringement.  *See, e.g.*, *MONEC Holding AG v. Motorola Mobility, Inc.*, — F. Supp. 2d —, 2012 WL 4340653, at *8 (D. Del. Sept. 20, 2012) (finding that lack of factual content pled regarding knowledge that induced acts constitute patent infringement warranted dismissal of inducement claim); *HSM Portfolio LLC v. Fujitsu Ltd.*, Civil Action No. 11-770-RGA, 2012 WL 2580547, at *1 (D. Del. July 3, 2012) (finding allegation that purported indirect infringer was "placed on notice of its infringement" as of a particular date insufficient because those

27

allegations of knowledge were otherwise "wholly unsupported by any factual allegations").

Similarly, there are insufficient facts alleged to lead to the plausible inference that Yahoo! specifically intended its users to infringe the patents-in-suit. The FAC merely contains the formulaic statement that Yahoo! "has and continues to infringe indirectly . . . [the patents at issue] by inducing others to infringe . . . including at least users of Yahoo! Messenger." (D.I. 43 at ¶¶ 13, 18, 23, 28, 33) These allegations contain no factual assertions that go to Yahoo!'s specific intent to induce and encourage infringement—no factual allegations, for example, about the nature of the relationship between Defendant and its users, nor about how the use of Yahoo! Messenger relates to the patented methods referenced in the claims of the patents-at-issue. To the extent that Plaintiff relies on the bare fact that Yahoo! continued to make Yahoo! Messenger available to its users after Plaintiff provided Yahoo! with the afore-mentioned "written notice" of infringement, the lack of any factual content alleged regarding the substance of that notice provides the Court with no basis to infer that Defendant, after receiving the notice, could have specifically intended for its users to continue infringing the patents. *See, e.g., MONEC*, 2012 WL 4340653, at \*8 (finding that plaintiff's "conclusory averments" that defendant "s[old], advertis[ed], suppli[ed] and instruct[ed] its respective customers on the use of the infringing product" were insufficient to establish specific intent); *Fujitsu*, 782 F. Supp. 2d at 891-92 (finding that generic allegation that defendants were provided with "written notice" of patents-in-suit did not set out a plausible allegation that defendants had specific intent to induce infringement).

For these reasons, I recommend that Defendant's motion to dismiss as to induced infringement be granted.

## 2. Contributory Infringement

Under 35 U.S.C. § 271(c), a contributory infringer is one who:

offers to sell or sells within the United States or imports into the United
States a component of a patented machine, manufacture, combination or
composition, or a material or apparatus for use in practicing a patented
process, constituting a material part of the invention, knowing the same to
be especially made or especially adapted for use in an infringement of such
patent, and not a staple article or commodity of commerce suitable for
substantial noninfringing use.

*See also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009). Therefore,

similar to inducement, Section 271(c) requires a showing that the alleged contributory infringer

"knew that the combination for which its components were especially made was both patented

and infringing and that defendant's components have no substantial non-infringing uses." *Id.*

(internal quotation marks and citations omitted); *see also Walker Digital,* 852 F. Supp. 2d at

566.[8]  When pleading a claim of contributory infringement, a plaintiff has an obligation to

provide facts that allow a reasonable inference that all elements of a contributory infringement

cause of action are plausible. *Bill of Lading*, 681 F.3d at 1337 ("[A] district court [is] required to

analyze the facts plead in the . . . complaint[] and all documents attached thereto *with reference*

---

[8]      As with a claim for induced infringement, a claim for contributory infringement
thus must also contain allegations of the requisite knowledge of the patent-in-suit at the time of
infringement. *MONEC*, 2012 WL 3201744, at *3 (citations omitted). As before, Defendant
challenges the sufficiency of the allegation of its knowledge of the patent-in-suit only as to Count
Five (involving allegations of indirect infringement regarding the '500 Patent) on the grounds that
"Pragmatus has not alleged that Yahoo! had any knowledge of [the '500 Patent] before the filing
of this suit." (D.I. 46 at 10 n.3)  For the same reasons as previously discussed with respect to the
inducement claim, even if Plaintiff's contributory infringement claim was otherwise properly
pled, I would recommend that Plaintiff's claim for damages be limited to those from the date of
the filing of the initial Complaint unless it was able to make more detailed factual allegations
regarding when Defendant received notice of the patent-at-issue.

*to the elements of a cause of action for contributory infringement . . . .*") (emphasis added);
*Pragmatus Telecom*, 2012 WL 2700495, at \*1. This includes the requirement that the alleged
contributory infringer knew that the combination for which its components were especially made
was both patented and infringing, and that those components have no substantial non-infringing
use. 35 U.S.C. § 271(c); *Bill of Lading*, 681 F.3d at 1337-38; *E.I. Du Pont*, 2012 WL 4511258,
at \*8-9; *Pragmatus Telecom*, 2012 WL 2700495, at \*1.

Defendant argues that Plaintiff's claims of contributory infringement are insufficient
because they are silent as to these necessary elements. (D.I. 8 at 14-15) Plaintiff responds that it
has properly plead contributory infringement because it "identified a Yahoo! product that is used
by third-parties to directly infringe (Yahoo! Messenger)," it "unambiguously pled prior
knowledge of the patents-in-suit" and it pled that it had provided Yahoo! with written notice of
its infringement. (D.I. 45 at 17)

Plaintiff's pleadings contain insufficient factual allegations to support a plausible claim of
contributory infringement. Plaintiff was required to sufficiently plead facts plausibly establishing
that Yahoo! had the requisite knowledge that Yahoo! Messenger was especially made or
especially adapted for use in an infringement of the patents-in-suit and that Yahoo! Messenger
had no substantial non-infringing use. However, the FAC fails to reference these legal elements.
Moreover, the FAC provides no detail that would flesh out the factual underpinnings supporting
such elements even had they been asserted. *See HSM Portfolio*, 2012 WL 2580547, at \*1. Nor
can the bare allegation that Defendant's users infringe the patents-in-suit save Plaintiff's claim.
(*See* D.I. 43 at ¶¶ 13, 18, 23, 28, 33) The mere allegation that Yahoo! Messenger may be used to
infringe is not sufficient to allow a reasonable inference that, *inter alia*, Yahoo! Messenger has

*no* substantial noninfringing uses. *See Bill of Lading*, 681 F.3d at 1337-38 (disagreeing with plaintiff's argument that it sufficiently plead contributory infringement when it alleged that "as customized" the defendants' products have no substantial non-infringing use); *Classen Immunotherapies, Inc. v. Biogen IDEC*, Civil No. WDQ-04-2607, 2012 WL 1963412, at *10 (D. Md. May 30, 2012).

For these reasons, I also recommend that Plaintiff's complaint as to contributory infringement be dismissed. *See, e.g.*, *E. I. Du Pont*, 2012 WL 4511258, at *9 (failure to reference elements of a contributory infringement claim, or to make sufficient factual allegations regarding those elements, warranted dismissal of claim); *MONEC*, 2012 WL 4340653, at *8 (same); *Pragmatus Telecom*, 2012 WL 2700495, at *1 (finding that "bare bones" nature of allegation of contributory infringement, supported by "no facts," warranted dismissal of that claim).

## IV.   CONCLUSION

For the foregoing reasons, I recommend that the Court GRANT-IN-PART and DENY-IN-PART Defendant's motion to dismiss. Specifically, I recommend that the court DENY Defendant's motion as it pertains to Plaintiff's allegations of direct infringement, but that it GRANT Defendant's motion as it pertains to Plaintiff's allegations of indirect infringement without prejudice.[9]

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

---

[9]     Plaintiff suggested the potential for a cure of any pleading deficiencies by further amendment of the FAC. (D.I. 45 at 19) As there is no pending motion pursuant to Rule 15, the Court declines to consider such a request at this stage. *MONEC*, 2012 WL 4340653, at *10 n.12.

31

Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the

loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874,

878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Non-Pro Se Matters For

Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is

available on the District Court's website, located at http://www.ded.uscourts.gov.


Dated: November 13, 2012

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

32