## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PRAGMATUS AV, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-902-LPS-CJB |
| | ) | |
| YAHOO! INC., | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION

Plaintiff Pragmatus AV, LLC ("Pragmatus" or "Plaintiff") filed this action for patent infringement against Defendant Yahoo! Inc. ("Yahoo!" or "Defendant"). Presently pending before the Court is Defendant's Renewed Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) Or, In the Alternative, Motion for Injunction ("Renewed Motion to Transfer"). (D.I. 130) For the reasons that follow, the Court recommends that the Renewed Motion to Transfer be DENIED.[1]

## I.    BACKGROUND

### A.    The Parties

Plaintiff Pragmatus is a Virginia limited liability company with its principal place of business in Alexandria, Virginia. (D.I. 160 at ¶ 1) Defendant Yahoo! is a Delaware corporation

---

[1]      There is a split of authority in the courts as to whether a motion to transfer venue should be treated as a dispositive or non-dispositive motion. *See, e.g., Pragmatus AV, LLC v. Yahoo! Inc.*, C.A. No. 11-902-LPS-CJB, 2013 WL 174499, at *1 (D. Del. Jan. 16, 2013); *see also McKee v. PetSmart, Inc.*, C.A. No. 12-1117-SLR-MPT, 2013 WL 1163770 (D. Del. Mar. 20, 2013) (titling decision on motion to transfer venue as "Report and Recommendation"), *report and recommendation adopted*, 2013 WL 2456719 (D. Del. June 5, 2013). There is, however, recent precedent from our Court suggesting that such a motion is most properly treated as not dispositive. *See, e.g., In re Heckmann Corp. Sec. Litig.*, C.A. No. 10-378-LPS-MPT, 2011 WL 1219230, at *1 (D. Del. Mar. 31, 2011). The motion seeking injunctive relief is dispositive. 28 U.S.C. §§ 636(b)(1)(A) & (b)(1)(B).

with its principal place of business in Sunnyvale, California. (*Id*. at ¶ 2; D.I. 30 at ¶ 2)

## B.     Background

On November 15, 2010, Pragmatus filed two separate actions in the United States District

Court for the Eastern District of Virginia alleging infringement of five patents against Facebook,

Inc. ("Facebook") and other defendants (collectively, the "Facebook Actions"). (D.I. 130 at 5

n.4) In one of the suits, Pragmatus accused Facebook and other defendants of infringing U.S.

Patent Nos. 7,730,132 ("the '132 patent"); 7,822,813 ("the '813 patent"); and 7,831,663 ("the

'663 patent"). (*Id.*) In the second, Pragmatus filed suit only against Facebook, alleging

infringement of U.S. Patent Nos. 7,421,470 ("the '470 patent"); and 7,433,921 ("the '921

patent"). (*Id.*) The Facebook Actions were subsequently transferred to the United States District

Court for the Northern District of California ("Northern District") on February 3, 2011 and May

6, 2011, where they are currently stayed pending reexamination. (*Id.*; D.I. 154 (hereinafter,

"Tr.") at 41)

On October 4, 2011, Plaintiff filed this action against Defendant asserting infringement of

five patents[2] (collectively, the "Delaware Patents"). (D.I. 1) In lieu of answering, on December

1, 2011, Defendant filed a Motion to Dismiss for Failure to State a Claim.[3] (D.I. 7) On January

18, 2012, Judge Leonard P. Stark entered a Scheduling Order in the case. (D.I. 18) On April 6,

---

[2]      The patents at issue in this litigation are U.S. Patent Nos. 6,237,025 ("the '025 patent"); 6,351,762 ("the '762 patent"); 5,854,893 ("the '893 patent"); 7,185,054 ("the '054 patent"); and 5,896,500 ("the '500 patent").

[3]      On November 13, 2012, the Court issued a Report and Recommendation, which recommended denying in part and granting in part Defendant's motion to dismiss. (D.I. 61) On May 24, 2013, the District Court overruled Pragmatus' objections and adopted the Report and Recommendation. (D.I. 153)

2012, Judge Stark referred the case to the Court "to hear and resolve all pretrial matters, up to and including the resolution of case-dispositive motions." (D.I. 32)

On March 27, 2012, Defendant filed a Motion to Transfer Venue to the United States District Court for the Northern District of California ("First Motion to Transfer"). (D.I. 28) In a Report and Recommendation dated October 15, 2012, the Court recommended denial of Defendant's Motion. (D.I. 52) Defendant timely objected, (D.I. 58), and on January 16, 2013, the District Court overruled the objections, adopted the Report and Recommendation, and denied the Motion, (D.I. 87).

On March 15, 2013, Plaintiff filed a separate lawsuit against Yahoo! in the Northern District (the "California Action") alleging infringement of the '470 and '921 patents (the "California Patents")—two of the patents that are also being litigated in one of the Facebook Actions. (D.I. 130 at 5) Yahoo! moved to relate the California Action to the Facebook Actions and to stay the California Action pending completion of reexamination. (Tr. at 41) However, on June 27, 2013, the Northern District determined that the California Action against Yahoo! and the Facebook Actions are not related. (D.I. 166)[4]

On April 2, 2013, Defendant filed the Renewed Motion to Transfer, (D.I. 130), and a related Motion to Stay Proceedings Pending Resolution of Yahoo! Inc.'s Motions to Transfer and

---

[4]    After briefly staying the California Action, the Northern District recently held a case management conference in which it set a deadline for amended pleadings. Minute Entry, *Pragmatus AV, LLC v. Yahoo!, Inc.*, No. 3:13-cv-01176, (D.I. 21), (N.D. Cal. May 28, 2013); Minute Entry, *Pragmatus AV, LLC v. Yahoo!, Inc.*, No. 3:13-cv-01176, (D.I. 26), (N.D. Cal. July 19, 2013). On August 19, 2013, Plaintiff filed its answer to the Yahoo!'s counterclaims in the California Action. Plaintiff's Answer to Defendant's Counterclaims, *Pragmatus AV, LLC v. Yahoo!, Inc.*, No. 3:13-cv-01176, (D.I. 31), (N.D. Cal. August 19, 2013). In the Facebook Actions, however, Plaintiff's motion to lift the stay was subsequently denied. (Tr. at 66)

Enjoin ("Motion to Stay"), (D.I. 131). Briefing was completed as to the Motions on April 29,

2013, (D.I. 143), and oral argument was held as to both on May 23, 2013, (Tr. at 1). On May 30,

2013, the Court issued a Memorandum Order denying the Motion to Stay. (D.I. 155)

## II. DISCUSSION

With its Renewed Motion to Transfer, Yahoo! requests that the Delaware Action be

transferred to the Northern District or, in the alternative, that Pragmatus be enjoined from

prosecuting the California Action. (D.I. 130) The Court will address each of these requests in

turn.

### A. Motion to Transfer

#### 1. Standard of Review

Section 1404(a) of Title 28 provides the statutory basis for a transfer inquiry. It provides

that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought or to

any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

"[S]ection 1404(a) was intended to vest district courts with broad discretion to determine,

on an individualized, case-by-case basis, whether convenience and fairness considerations weigh

in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (citing

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1988)). The United States Court of

Appeals for the Third Circuit has clearly emphasized the hurdle that a defendant faces when it

seeks to have a matter transferred to another jurisdiction pursuant to Section 1404(a), explaining

that "courts normally defer to a plaintiff's choice of forum" and thus "the plaintiff's choice of

venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879-80 (internal quotation marks and

4

citation omitted).[5] This general principle, drawn from the historic respect accorded a plaintiff's

choice of venue, suggests that "a transfer is not to be liberally granted." *Shutte v. Armco Steel*

*Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks and citation omitted).

The party seeking a transfer has the burden "to establish that a balancing of proper

interests weigh[s] in favor of the transfer." *Id.*; *see also Jumara*, 55 F.3d at 879. That burden is

a heavy one: "unless the balance of convenience of the parties is *strongly in favor of defendant*,

the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25 (internal quotation marks

and citation omitted) (emphasis added); *see also CNH Am. LLC v. Kinzenbaw*, C.A. No. 08-

945(GMS), 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009).

The Third Circuit has observed that, in undertaking this transfer analysis, "there is no

definitive formula or list of . . . factors to consider." *Jumara*, 55 F.3d at 879. Instead, courts

must analyze "all relevant factors" to determine whether "the litigation would more conveniently

proceed and the interests of justice be better served by transfer to a different forum." *Id.* (internal

quotation marks and citation omitted). Nevertheless, the Third Circuit has identified a set of

private interest and public interest factors that should be taken into account in this analysis (the

"*Jumara* factors"). The private interest factors to consider include:

> [1] [The] plaintiff's forum preference as manifested in the original choice,
> [2] the defendant's preference, [3] whether the claim arose elsewhere, [4]
> the convenience of the parties as indicated by their relative physical and
> financial condition, [5] the convenience of the witnesses—but only to the
> extent that the witnesses may actually be unavailable for trial in one of the
> fora . . . and [6] the location of books and records (similarly limited to the

---

⁵        In analyzing a motion to transfer in a patent case, the law of the regional circuit
(here, the Third Circuit), applies. *Intellectual Ventures I LLC v. Checkpoint Software Tech. Ltd.*,
797 F. Supp. 2d 472, 487 n.7 (D. Del. 2011) (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d
1311, 1331 (Fed. Cir. 2011)).

extent that the files could not be produced in the alternative forum).

*Id.* at 879 (internal citations omitted).  The public interest factors to consider include:

> [1] [T]he enforceability of the judgment, [2] practical considerations that
> could make the trial easy, expeditious, or inexpensive, [3] the relative
> administrative difficulty in the two fora resulting from court congestion, [4]
> the local interest in deciding local controversies at home, [5] the public
> policies of the fora, and [6] the familiarity of the trial judge with the
> applicable state law in diversity cases.

*Id.* at 879–80 (internal citations omitted).  The United States Court of Appeals for the Federal

Circuit has indicated that district courts should explicitly consider each of these *Jumara* factors,

at least to the extent that the parties make "arguments" about them.  *In re Link_A_Media Devices*

*Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011) (noting that it would be "improper to ignore" any of

the factors in such a circumstance).

## 2.   The Renewed Motion

As noted above, Defendant previously filed the First Motion to Transfer in this case,

seeking to transfer the case to the Northern District.  In recommending denial of that Motion, the

Court found that, while the ultimate "issue [wa]s a close one[,]" the Defendant had not

"demonstrated that the balance of convenience of the parties tip[ped] *strongly* in its favor, as is

required by Third Circuit precedent" where:

> [T]he plaintiff's choice of forum and practical considerations weigh[ed]
> against transfer.  The defendant's forum preference and whether the claim
> arose elsewhere weigh[ed] in favor of transfer.  Two other factors—the
> convenience of the witnesses and the location of books and records— also
> weigh[ed] in favor of transfer, though only slightly, and not sufficiently to
> make a material impact on the Court's decision.

*Pragmatus AV, LLC v. Yahoo! Inc.*, Civil Action No. 11-902-LPS-CJB, 2012 WL 4889438, at

6

*15 (D. Del. Oct. 15, 2012) (hereinafter "*Pragmatus I*").[6] After objection from Defendant, the

District Court adopted the Court's recommendation, finding that the Court properly applied and

weighed the *Jumara* factors. *Pragmatus AV, LLC v. Yahoo! Inc.*, Civil Action No. 11-902-LPS-

CJB, 2013 WL 174499, at *1-2 (D. Del. Jan. 16, 2013) (hereinafter "*Pragmatus II*").

   In filing the Renewed Motion to Transfer, Defendant seeks to have the Court reconsider

its previous ruling in light of recently developed circumstances. (*See* Tr. at 5; D.I. 130 at 5-6)  In

particular, Defendant argues that Pragmatus' recent filing of the California Action in the

Northern District alters the transfer calculus in various ways, and undercuts arguments Plaintiff

previously made in opposing the First Motion to Transfer. (*See* D.I. 130 at 1)[7]

### a.   *In re EMC Corp.*

   Before addressing the substance of Defendant's arguments, the Court will first address a

---

   [6]    In setting out its decision in this Report and Recommendation, the Court will
assume familiarity with the substance of its decision in *Pragmatus I*.  The Court incorporates by
reference into this Report and Recommendation its analysis of the *Jumara* factors as set out in
*Pragmatus I*, except to the extent it discusses below how its analysis would or would not be
altered by the arguments raised by both parties with regard to the Renewed Motion to Transfer.

   [7]    In addition to challenging Defendant's substantive assertions in this regard,
Plaintiff also argues that the "law of the case doctrine" bars re-litigation of this transfer issue.
Under the law of the case doctrine, a court should generally decline to reconsider a question that
was actually decided in an earlier stage of the same litigation. *See, e.g., AL Tech Specialty Steel
Corp. v. Allegheny Int'l Credit Corp.*, 104 F.3d 601, 605 (3d Cir. 1997); *Shockley v. McCarty*,
677 F. Supp. 2d 741, 746 (D. Del. 2009).  The doctrine does provide for exceptions in which a
legal question can be later reconsidered in the same case, including where (as Yahoo! suggests is
the case here) "new evidence is available." *In re City of Philadelphia Litig.*, 158 F.3d 711, 718
(3d Cir. 1998); *see also Hamilton v. Leavy*, 322 F.3d 776, 787 (3d Cir. 2003) (noting that the
"new evidence" exception may only be invoked when the new evidence "differs materially from
the evidence of record when the issue was first decided and if it provides less support for that
decision").  In light of the fact that the parties address this doctrine only briefly in their filings,
and because the Court's decision on the merits otherwise resolves the issue in Plaintiff's favor,
the Court need not engage in a separate analysis as to whether the law of the case doctrine would
apply here.

related legal issue, which the parties touched on briefly in their filings and at oral argument. As noted above, Defendant's arguments as to the merits of the Renewed Motion to Transfer are based on events related to the March 15, 2013 filing of the California Action—an event that occurred nearly a year and a half after the October 4, 2011 filing of the instant action in this Court. These dates have relevance in light of the Federal Circuit's recent decision in *In re EMC Corp.*, 501 F. App'x 973 (Fed. Cir. 2013). In that case, the Federal Circuit, quoting the United States Supreme Court's opinion in *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960), stated that "[m]otions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.'" *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013). The *In re EMC Corp.* Court also noted that "[w]hile considerations of judicial economy arising *after* the filing of a suit do not weigh against transfer, a district court may properly consider any judicial economy benefits which would have been apparent at the time the suit was filed . . . [including] a district court's experience with a patent in prior litigation and the co-pendency of cases involving the same patent." *Id.*

Defendant acknowledges that Plaintiff's filing of the California Action is "obviously a post-filing fact" as it relates to this case. (Tr. at 30) However, it argues that there are and should be some circumstances, even accounting for the holding in *In re EMC Corp.*, in which post-filing facts can have bearing on an analysis of the *Jumara* factors (including a Court's consideration of the *Jumara* factor assessing "practical considerations that could make the trial easy, expeditious, or inexpensive," such as those relating to judicial economy). (Tr. at 31-32) It suggests that one such circumstance is where a post-filing fact "undercut[s] . . . previous arguments and previous rulings" made regarding a motion to transfer venue. (Tr. at 32; *see also id.* at 30, 34) Defendant

8

asserts that the filing of the California Action (and what can be inferred from it) is one such fact. (*Id.*)

The Court agrees with Defendant, (Tr. at 32), that there is at least some uncertainty as to the full scope of *In re EMC Corp.*'s impact and meaning as to this question. This is particularly the case in light of other recent Federal Circuit case law suggesting that certain post-filing facts (at least those relating to co-pending cases) can and should be taken into account in analyzing convenience and fairness considerations relevant to a motion to transfer. For example, in noting that it is permissible for a court to consider the co-pendency of cases involving the same patent in ruling on a motion to transfer venue, the *In re EMC Corp.* Court cited for support only to *In re Vistaprint, Ltd.*, 628 F.3d 1342 (Fed. Cir. 2010). The latter case was one where the Federal Circuit took into account the efficiency gains that could be achieved by a single court handling the suit-at-issue and a "co-pending [suit] . . . involving the same patent and underlying technology[,]" despite the fact that the co-pending suit was filed well after the case in which transfer was sought. *In re Vistaprint, Ltd.*, 628 F.3d at 1346.[8] The Federal Circuit engaged in similar analysis in another case regarding a motion to transfer venue, *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (citing the judicial efficiencies inherent in having the suit-at-issue be tried in the same court as two other suits that involved the same three patents,

---

[8]     In the district court's order from which mandamus relief was sought in *In re Vistaprint, Ltd.*, the district court noted that it was "also presiding over a co-pending case, *ColorQuick L.L.C. v. FedEx Office and Print Services, Inc.*, No. 6:09-cv-572, also involving [the plaintiff] and the patent-in-suit." *ColorQuick, L.L.C. v. Vistaprint Ltd.*, No. 6:09-cv-323, 2010 WL 5136050, at *2, *8 (E.D. Tex. July 22, 2010). The plaintiff's suit against FedEx Office and Print Services, Inc. was filed more than six months after the same plaintiff filed suit against Vistaprint Ltd. *Compare* Complaint, *ColorQuick, L.L.C. v. Vistaprint Ltd.*, No. 6:09-cv-323 (E.D. Tex. July 21, 2009), *with* Complaint, *ColorQuick L.L.C. v. FedEx Office and Print Services, Inc.*, No. 6:09-cv-572 (E.D. Tex. December 30, 2009).

although the two other suits were filed many months after the suit from which mandamus was taken, and noting that "the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice").[9] *Cf. In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010) (recognizing that plaintiff's later-filed suit in the same court could be a fact weighing against transfer, but affording less weight to plaintiff's argument because, *inter alia*, the two suits involved "only a single overlapping patent" and would likely require "significantly different discovery, evidence, proceedings, and trial.").[10]

Ultimately, the Court need not further examine the full scope of the rule set forth in *In re EMC Corp.*, or whether its holding allows for consideration of the type of "exception" advocated by Defendant. This is because, even if the Court could properly take all of the proffered facts related to the California Action into account for purposes of the Renewed Motion to Transfer, the Court determines that they do not add support to that motion, nor would they alter

---

[9]     On July 13, 2007, MHL Tek, LLC ("MHL") filed the first suit (the one from which mandamus was taken) in the Eastern District of Texas against Volkswagen of America, Inc. ("VW"), among others. *In re Volkswagen of Am., Inc.*, 296 F. App'x 11, 12 (Fed. Cir. 2008). On November 21, 2007, VW filed the second suit in the Eastern District of Michigan, *Volkswagen of Am., Inc. v. MHL Tek, LLC*, No. 07-14992, 2008 WL 2609828, at *1 (E.D. Mich. June 30, 2008), which was later transferred to the Eastern District of Texas, *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). Finally, in March 2008, MHL filed the third suit against a different set of defendants. *In re Volkswagen of Am., Inc.*, 296 F. App'x at 13.

[10]     *See also Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19-21, 28-30 & n.4 (1960) (in a post-*Hoffman* decision, analyzing convenience factors regarding transfer pursuant to Section 1404—not Section 1404's restriction on where a suit subject to a transfer motion "might have been brought"—and considering facts regarding a related suit in the proposed transferee federal court, despite the fact that the related suit had been removed to federal court from state court after the filing of the suit-at-issue); *In re Vistaprint, Ltd.*, 628 F.3d at 1346 (citing the decision in *Cont'l Grain Co.* in support of its holding); *In re Volkswagen of Am., Inc.*, 566 F.3d at 1351 (same).

the outcome of the First Motion to Transfer.[11]

> **b.** **Plaintiff's Filing of the California Action Does Not Alter the Court's Conclusion that an Analysis of the *Jumara* Factors Does Not Strongly Favor Transfer.**

Defendant argues that Plaintiff's filing of the California Action: (1) "demonstrates a clear pattern of forum shopping"; (2) undercuts the legitimacy of Plaintiff's prior arguments as to why Plaintiff filed the Delaware Action in this District; (3) undercuts Plaintiff's prior arguments regarding the inconvenience of litigating in the Northern District; and (4) raises a number of new practical considerations that favor transfer. (D.I. 130 at 6-8; D.I. 143 at 5-6) The Court will address each of these arguments in turn.

First, as to its argument regarding forum shopping, Defendant charges Plaintiff with intentionally filing separate lawsuits in this Court and the Northern District regarding related patents, in order to "gain a tactical advantage" over Defendant, to "ensure that the two cases

---

[11]    In ruling on the First Motion to Transfer, and considering the "practical considerations" *Jumara* factor, the Court took into account certain judicial inefficiencies that would be created by transfer, relating to: (1) the fact that after the filing of this case, but before the filing of the First Motion to Transfer, Plaintiff filed fourteen other actions in this District alleging infringement of one or more of the patents-in-suit, seven of which remained pending at the time of decision on the First Motion to Transfer; and (2) certain familiarity the Court had gained with the instant action. *Pragmatus I*, 2012 WL 4889438, at *1, *12-13; *see also Pragmatus II*, 2013 WL 174499, at *1-2 (citing *In re Volkswagen of Am., Inc.*, 566 F.3d at 1351). Despite an indication to the contrary in its briefing, (D.I. 130 at 9), after oral argument, the Court does not understand Defendant here to be objecting to the Court's prior consideration of these post-filing facts. (Tr. at 8-9) Instead, the Court understands that the basis for the Defendant's Renewed Motion to Transfer is its argument that—even taking into account all of the facts that the Court previously considered in assessing the First Motion to Transfer—when one now considers how the new information regarding the California Action impacts certain of those facts, the balance of convenience strongly tips in its favor, warranting transfer. (Tr. at 8-9; *see also* Tr. 34-35 (Defendant's counsel noting that the Renewed Motion to Transfer should be assessed by determining how the new filing of the California Action impacts the previous holding by the Court as to the First Motion to Transfer))

against Yahoo! [would not be] consolidated in the same court" and thus to intentionally "inflict[]

additional expense upon Yahoo! by forcing two trials on the same subject matter, and by

threatening duplicative discovery." (D.I. 130 at 6-8 & n.5; D.I. 143 at 5)[12]  In light of this,

Defendant argues Pragmatus' choice of forum in this District for the instant suit—as the product

of a bad faith attempt to forum shop—should be given less weight with regard to the first *Jumara*

private interest factor: "the plaintiff's forum preference as manifested in the original choice."

(*Id.*)

       Yet Plaintiff has provided a reasonable explanation for why (and when) it did what it did.

It explained that, prior to filing the instant action against Yahoo!, it brought suit against

Facebook in its home forum, the Eastern District of Virginia, a case transferred to the Northern

District. (D.I. 136 at 9)  Thereafter, when it was prepared to bring a case against Yahoo! on the

Delaware Patents in 2011, it filed the case in this District—the district most convenient to it

where its choice of venue was on strongest legal footing.  (*Id.*)  As to *why* it did not then include

the California Patents in the instant suit, Pragmatus asserts that in October 2011, its infringement

case against Facebook as to the California Patents was stayed pending reexamination, and it did

---

[12]      Defendant asserts that Pragmatus' thought process was as follows:

> Had Pragmatus asserted all seven of the patents [the five in the Delaware
> Action and the two in the California Action] in its original filing in this
> Court, it would have been at great risk of having the case transferred to the
> Northern District . . . where two of the patents were already being asserted
> against Facebook [in the Facebook Actions].  So instead of including all
> seven patents in the original complaint, Pragmatus only asserted five of
> them so that it could argue that none of the patents in this case were
> asserted in the Facebook case.

(D.I. 130 at 6-7)

not wish to risk that (if it included the California Patents in the instant suit) this entire case would be thereafter subject to a similar motion to stay. (Tr. at 68)  Moreover, Pragmatus asserts that it recognized that since the California Patents were already at issue in the Northern District (in the Facebook Actions), if and when it did choose to file suit against Yahoo! as to those patents, "the judicial efficiency of litigating those patents in a single forum [in the Northern District would ] outweigh[] the benefits to it of litigating the California Patents against Yahoo! in the [District of] Delaware." (D.I. 136 at 10)  And as to *when* it chose to file the California Action, Plaintiff explains that it did so in 2013 (as opposed to 2011, when this case was filed), because the California Patents had just come out of reexamination, and it assumed there was now an opportunity for all of the cases involving the California Patents to move forward at the same time. (Tr. at 66)

Plaintiff's explanation is a plausible one, and the record here is not clear enough to support a conclusion that its actions are clearly indicative of a bad faith attempt to shop for a favorable forum, or of a bad faith attempt to force Defendant to engage in duplicative litigation. Defendants cite to no authority (such as to case law involving similar factual circumstances) in support of its claim that the Court should find otherwise.  And indeed, Plaintiff's actions are just as consistent with that of a party acting in good faith—one seeking to bring infringement claims against a defendant in fora that has understandable ties to the patents-in-suit or that defendant, and to do so in a way that ensures that the allegations are addressed as promptly as possible.[13]  In

---

[13]        Indeed, at oral argument, Defendant's counsel admitted that Plaintiff's good faith rationale for its actions might indeed seem valid in the abstract. (Tr. at 24-26)  However, it argued for the first time that such a rationale was undercut by the fact that when Pragmatus filed the California Action, it chose not to seek to have the Northern District deem the Facebook Actions and the California Action as "related" actions that should be heard by one judge (and that

such circumstances, and without a greater indication in the record of bad faith, the Court's

calculus as to the first private interest *Jumara* factor would not change.[14]

Second, Defendant notes that with regard to the First Motion to Transfer, Plaintiff argued

that this District was physically close to the home of its two managers, providing it with a

legitimate and rational reason to file suit in the District (such that *Jumara*'s first private interest

factor should redound in its favor). (D.I. 130 at 7) Defendant claims that the filing of the

California Action "undercuts" that assertion. (*Id.*)

In ruling on the First Motion to Transfer, the Court assessed the first *Jumara* private

interest factor this way:

> [A] plaintiff's decision to file suit in the district in which a defendant is
> incorporated—a district where plaintiff can have some certainty that there
> will be personal jurisdiction over the defendant—is a rational, legitimate

Plaintiff even affirmatively opposed a motion to relate). (*Id.*) Yet later at oral argument,
Plaintiff's counsel again provided a reasonable explanation as to why Pragmatus had opposed the
motion to relate. (*Id.* at 40-41) Aside from noting that the Northern District's precedent would
not necessarily have dictated that the cases should be deemed related, Pragmatus also noted that
it understandably wished to oppose Yahoo!'s attempt to relate the California Action to "a case
that's been stayed . . . [and was not] proceeding to trial" (i.e., the Facebook Actions). (*Id.* at 41)
Moreover, Plaintiff noted that its opposition to the motion to relate was conditional, in that it
would have agreed to the motion if Yahoo! would have agreed to be estopped from making
arguments presented during the reexamination. (*Id.* at 41-42) Subsequently, the Northern
District has ruled that the two cases are not, in fact, related. (D.I. 166)

[14]     *Compare Time Warner Cable, Inc. v. USA Video Tech. Corp.*, 520 F. Supp. 2d
579, 588-89 (D. Del. 2007) (finding that a party's filing is not an example of forum shopping
where it can be said that the forum "was the most efficient forum in which to bring the case"),
*with CSI Tech., Inc. v. Commtest Instruments Ltd.*, Civ. No. 08-450 (RHK/JJK), 2008 WL
4057546, at *6-7 (D. Minn. Aug. 26, 2008) (finding plaintiff guilty of forum shopping where the
"only reasonable conclusion" to be drawn from the plaintiff naming a particular defendant was
"to muddy the transfer waters and hope to justify venue in Minnesota"), *and Portfolio Techs.,
Inc. v. Intellx Inc.*, No. 1:05-CV-159, 2005 WL 1189604, at *5 (W.D. Mich. May 19, 2005)
(noting that the plaintiff's failure to offer any explanation for its neglect and inaction in a case
raised the concern that the plaintiff was forum shopping).

14

choice. *See, e.g., Helicos Biosciences Corp. v. Illumina, Inc.*, Civ. No. 10-735-SLR, 2012 WL 1556390, at *3-4 (D. Del. May 3, 2012) (noting that "a defendant's state of incorporation had always been a predictable, legitimate venue for bringing suit" in that it is a venue where a defendant can be sued); *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 754 (D. Del. 2012); *Mallinckrodt, Inc.*, 670 F. Supp. 2d at 357. This is especially understandable where that district is in relatively close physical proximity to the plaintiff's place of business (here, Virginia). *Helicos Biosciences Corp.*, 2012 WL 1556390, at *4 (finding that fact that plaintiff's principal place of business was in Massachusetts, a "venue close to" Delaware, was a legitimate reason for filing suit in this District).

*Pragmatus I*, 2012 WL 4889438, at *6. The Court finds nothing about the filing of the

California Action that undercuts the basis for its decision as to this factor. As an initial matter, as

the above excerpt makes clear, even had physical proximity to Plaintiff's home office not been

put forward as a legitimate rationale for filing in this District, Defendant's incorporation here

(and the impact of that fact on jurisdictional questions) would have provided a more than ample

basis for this factor to weigh against transfer. Moreover, there is otherwise nothing inherently

contradictory in Plaintiff's actions. As Plaintiff has explained, even though it is, as a general

matter, more convenient for it to litigate in this District than the Northern District, it was possible

for it to litigate in the Northern District. And with respect to filing a suit *regarding the*

*California Patents*, it was required to take into account the fact that it was already "litigating

[those patents] in the Northern District . . . against Facebook[.]" (D.I. 136 at 10) For the reasons

set out above, Pragmatus' resulting decision that "the judicial efficiency of litigating those

patents in a single forum outweighed the benefits to it of litigating the California Patents against

Yahoo! in Delaware" is an understandable one, and does not suggest that the Court's decision as

to the first *Jumara* private interest factor should change. (*Id.*)

Third, Defendant claims that the Court's calculus as to *Jumara*'s fourth private interest factor ("the convenience of the parties as indicated by their relative physical and financial condition") should be altered, because in filing the California Action, "Pragmatus has admitted that litigating the present case in the Northern District . . . is not inconvenient." (D.I. 130 at 8) The Court previously found this factor not to favor either side. *Pragmatus I*, 2012 WL 4889438, at *9. In terms of Plaintiff's convenience, it found Plaintiff's showing to be mixed, as while this District was in close "physical proximity" to Plaintiff's principals, Plaintiff had not put forward evidence to suggest that it would be particularly logistically or financially burdensome for it to litigate in the Northern District. *Id.*

Nothing about the filing of the California Action suggests that this analysis was incorrect. Again, it can simultaneously be the case that it is less time consuming and costly (and thus, more convenient) for Pragmatus' principals to travel to this District (as opposed to the Northern District), and yet also the case that litigating in the Northern District does not amount to an insurmountable or undue burden for Pragmatus (as the filing of the California Action might be said to emphasize). If anything, events relating to the California Action simply underscore the rationale for the Court's decision as to this factor; they do not suggest the decision should change.

Fourth, Defendant argues that Plaintiff's new filing changes the balance of "practical considerations that could make the trial easy, expeditious, or inexpensive"—the second *Jumara* public interest factor. (D.I. 130 at 8-9) Specifically, Defendant argues that "[b]oth of the cases involve the same accused product and patents from the same family that have overlapping specifications and common claim terms." (*Id.* at 8) Defendant argues that this will require the

16

parties "to engage in duplicative discovery" and will "force two district courts to address similar claim construction issues and similar noninfringement and invalidity issues." (*Id.* at 8-9)[15]

Defendant is no doubt correct that if the two litigations proceed forward in different courts, there is the prospect of overlapping discovery and overlapping legal issues that would have to be addressed in two fora. This situation is not unique in patent litigation, and should be able to be mitigated by the good faith efforts of counsel to minimize unnecessary duplication of efforts. But it can be said that if this case were transferred, *and if* Northern District deemed it related to the California Action, *and if* the Northern District consolidated those cases to allow for one period of discovery and one trial, transfer could eliminate otherwise expected overlap in litigation efforts.

On the other hand, the California Patents are different from the Delaware Patents, and so efficiencies gained from transferring this case to the Northern District, in light of the filing of the California Action, might not be as extensive as Defendant argues. While the two sets of patents are related and share a common specification, they undisputedly have different claim terms (albeit with some overlap). This will likely mean that there will be different claim construction issues (and relatedly, differing infringement-related allegations) and relevant prior art at play in the respective litigations. (*See* Tr. at 19-22, *see also id.* at 45-47) In addition, Plaintiff contests Defendant's characterization of the respective patents, arguing that the Delaware Patents and California Patents are directed towards different technologies: "[T]he Delaware Patents primarily relate to A/V technologies, while the California Patents relate to instant messaging

---

[15]     This set of considerations does not neatly fit into the scope of the "exception" to *In re EMC Corp.* suggested by Defendant.

technology." (D.I. 136 at 1)

Perhaps more importantly, if the Court could consider the potential net efficiencies gained

from transferring this action to the Northern District at this late stage, the Court would also have

to weigh these potential gains against the potential efficiency loss resulting from transfer. *See*

*Pragmatus II*, 2013 WL 174499, at *1 (denying transfer in part because "there would be a net

loss of efficiency for the federal court system as a whole"). And here, it is possible that even

were the case transferred, it may not be consolidated with the California Action—an outcome

that would lessen, if not eliminate, any potential for efficiency gains. *See Pragmatus AV, LLC v.*

*Yahoo! Inc.*, Civil Action No. 11-902-LPS-CJB, 2013 WL 2372206, at *3 (D. Del. May 30,

2013). Even if the two actions were consolidated, that would almost certainly have the effect of

delaying the "expeditious" progress of the case regarding the five patents-in-suit here (which is

nearing the close of discovery), in order to account for the fact that the California Action is at its

inception. Taking these concerns together with the other considerations listed above, the Court is

not convinced that the filing of the California Action indicates that "practical considerations that

could make the trial easy, expeditious, or inexpensive" weigh any further in favor of transfer than

they did before the California Action was filed.

In conclusion, because the filing of the California Action does not, in the Court's view,

alter the calculus as to any of the cited *Jumara* factors in favor of transfer, the Court recommends

denial of Yahoo!'s Renewed Motion to Transfer.

**B.     Motion to Enjoin**

With respect to its alternative motion to enjoin, Defendant attempts to implicate the

"first-filed" rule. (D.I. 130 at 10) In particular, Defendant requests the Court to enjoin Plaintiff

18

from prosecuting the "second-filed California Action." (*Id.*)

## 1.   Standard of Review

The Federal Circuit has adopted what is known as the "first-filed" rule in patent cases, which "generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions" to "avoid conflicting decisions and promote judicial efficiency." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012); *see also Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *rev'd on other grounds*, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). If applied, the rule counsels that a later-filed action involving the same patent controversy should be dismissed, transferred, or otherwise enjoined in favor of the first-filed action. *See Merial Ltd.*, 681 F.3d at 1299; *Genentech*, 998 F.2d at 938.[16] Exceptions to the rule are not rare and are made when justice or expediency requires, but there must be "sound reason that would make it unjust or inefficient to continue the first-filed action . . . [such as] the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Genentech*, 998 F.2d at 938.

## 2.   Applicability of the Rule

Defendant argues that "where there are two actions involving overlapping issues and parties pending in two federal courts, there is a strong presumption in favor of the forum of the first-filed suit." (D.I. 130 at 10 (citation omitted)) In this respect, Defendant argues that "[i]t is

---

[16]     Although the Third Circuit also recognizes the first-filed rule, our Court has found that, in patent cases, the Federal Circuit's law regarding the rule should apply. *See, e.g., Abbott Labs. v. Roxane Labs., Inc.*, Civil Action No. 12-457-RGA-CJB, 2013 WL 2322770, at *14 n.13 (D. Del. May 28, 2013) (citing cases).

indisputable that [the Delaware Action] and the California [A]ction overlap [in that] [b]oth cases involve the same parties, the same accused product, and multiple patents from the same family." (*Id.* at 11)

In analyzing the applicability of the first-filed rule in patent cases, the focus is on whether the same subject matter exists among the two cases. *Time Warner Cable, Inc. v. GPNE Corp.*, 497 F. Supp. 2d 584, 589-90 (D. Del. July 20, 2007). In making this determination, courts have considered factors including, *inter alia*, whether (1) there is an overlap of parties, (2) the cases involve the same patents, (3) there is an overlap of legal claims, and (4) if both suits were permitted to proceed simultaneously, there would be a substantial risk of inconsistent judgments. *See, e.g., Fuisz Pharma LLC v. Theranos, Inc.*, Civil Action No. 11-1061-SLR-CJB, 2012 WL 1820642, at *4-7 (D. Del. May 18, 2012) (citing cases).

Here, the Court finds that while there is an overlap in the identity of parties and there may be an overlap of certain legal issues among the two lawsuits, the cases are sufficiently different such that the first-filed rule does not apply.

For one, there is no overlap of patents between the Delaware and California Actions. This is important because, in this Court, judges "have tended to adhere to the first-filed rule in circumstances where the patents-in-suit among [two] cases were the same, while often declining to find" that the rule applies when the patents in one suit are different from those in the other. *Fuisz Pharma LLC*, 2012 WL 1820642, at *5 (citing cases); *see also, e.g., Thales Airborne Sys. S.A. v. Universal Avionics Sys. Corp.*, No. Civ. 05-853-SLR, 2006 WL 1749399, at *4 (D. Del. June 21, 2006) (noting that the "application" of the first-filed rule "seems limited to actions involving the same patents" and suggesting rule did not apply, where second-filed action in

20

District of New Jersey included claims regarding two additional patents) (internal quotation marks and citation omitted). Indeed, our Court has declined to apply the first-filed rule where the patent-in-suit in the second-filed action was different than those in the earlier-filed action, but was a continuation of and shared a common specification with two of the patents in the earlier-filed action. *Abbott Labs. v. Johnson and Johnson, Inc.*, 524 F. Supp. 2d 553, 555-58 (D. Del. 2007). In light of the fact that these cases involve different patents, as noted above in Section II.A.2.b, the subject matter of the California Action (regarding claim construction, infringement and invalidity), while similar to that at issue in the instant litigation in some ways, would likely be different in others.

In addition, there appears to be limited to no risk of inconsistent judgments. First, because there is no overlap of patents between the two actions, there can be no risk of inconsistent rulings with respect to invalidity. Second, the California Patents contain differing claim elements and at least arguably involve different technologies, further limiting the risk of inconsistent judgments. *See, e.g.*, *Thales Airborne Sys. S.A.*, 2006 WL 1749399, at *4 (declining to apply the first-filed rule and to enjoin a second-filed suit, to extent the suit involved patents not involved in the instant case, where although all of the patents "involve[d] TAWS technology, the [patents exclusively involved in the second-filed suit] arguably involve[d] different aspects of this broad category of technology than d[id] the [patents involved in the first-filed suit]"); *APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 396-98 (D. Del. 2002) (declining to apply first-filed rule because later-filed action involved two additional patents, which, while not "entirely unrelated" to patents in earlier-filed action, involved "different technologies and thus, different facts.").

21

Yahoo!'s reliance on *Cosden Oil & Chem. Co. v. Foster Grant Co., Inc.*, 432 F. Supp.

956 (D. Del. 1977) does not counsel a different result. (D.I. 130 at 11)  In *Cosden*, the first

action was filed by Cosden Oil and Chemical Co. ("Cosden") against Foster Grant Co., Inc.

("Foster") seeking a declaratory judgment that Foster's '434 patent was invalid, unenforceable

and not infringed by Cosden. *Cosden*, 432 F. Supp. at 957-58. After the filing of the first action,

a second related patent ("the '311 patent") was issued to Foster; on that same day, Foster filed a

second action against Cosden and two of Cosden's customers alleging infringement of the '311

patent in the Northern District of Texas. *Id.* at 958. Subsequently, Cosden filed an amended

complaint in the first action seeking a declaration that the '311 patent was invalid and not

infringed by it. *Id.* Thereafter, Cosden filed its motion to enjoin the second action. *Id.* It was in

this factual scenario that the *Cosden* Court granted Cosden's motion to enjoin. *Id.* at 960. Thus,

unlike the situation here (where there is no overlap of patents), in *Cosden*, at the time that the

motion to enjoin the second action was filed and subsequently granted, the related patent

involved in the second action *was* at issue in the first action.[17]

    For these reasons, the Court recommends that Defendant's request to enjoin the

California Action also be denied.

## III.   CONCLUSION

---

[17]    The Court also finds *Cosden* inapposite for another reason. In granting Cosden's
motion to enjoin, the *Cosden* Court noted that the "similarity between the '434 patent and the
'311 patent and the intimate relationship between the respective file histories [left] no question in
[the *Cosden* Court's] mind that the controversy surrounding the '311 patent is part and parcel of
the controversy surrounding the '434 patent." *Cosden*, 432 F. Supp. at 960. Here, the Court is
not left with such a conviction, at least on the record before it. As described above, the Court
finds that it is at least arguable that the Delaware and California Actions involve different, albeit
related subject matter, in that the patents involved in each are directed at different technologies.

For the foregoing reasons, the Court recommends Yahoo!'s Renewed Motion to Transfer be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Non-Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.


Dated: August 28, 2013

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE